LOTTINGER, Judge.
This is a tort action instituted by Clifton Newman against the Fidelity Mutual Insurance Company, for damages resulting from an accident which occurred : in the City of Lake Charles on December 29, 1953.
The petition alleges that on the day :of the accident the petitioner, while a guest in a 1952 Pontiac automobile owned by one Dalton J. Breaux, suffered a -fractured arm and other injuries when the car door on the right front side suddenly opened and he was'thrown from the vehicle. Negligence is charged against the car owner, Breaux, in failing to warn petitioner of the defective condition of the door when he had full knowledge of same, in driving at a high rafe of speed in reverse gear, in suddenly and violently applying his brakes and in failing to check the right front door when he knew of its defective condition and that plaintiff would be seated' near same. It is set forth that Breaux had in effect at the time of the accident a policy of-insurance whereby, defendant insurance company agreed to pay all damages up to the amount of $5,000 caused by tire, negligence of Breaux or anyone . using the vehicle with his permission .pjus medical payments up to $500 per person injured in the vehicle. The prayer is for damages for loss of earnings, medical expenses, disability and pain and suffering in. tiie .total amount of $5,500.
Following the filing of an exception of vagueness the plaintiff amended his petition alleging that he was informed by defendant’s insured after the accident that the right front door of the vehicle' was defective and would open; after having been properly closed, without the application of any pressure to the door handlés and that while he believed the door to be defective he did not have the technical knowledge so as to be' able to - name the specific mechanical defects which existed. ’ In addition he re-itemized and particularized his damages and alleged that as the failure of defendant to pay medical expenses was arbitrary and capricious he was, under LSA-R.S. 22:65S, entitled to attorney fees and penalties as therein provided.
The defendant’s answer is in the form of' a general denial and, in addition, the following alternative defenses are urged:
..(1). That the policy of-liability insurance sued upon had been rendered null and-void, by the insured, Dalton Breaux, in-that he violated, that certain clause in the policy. *406 requiring that he co-operate with' the defendant at all times with respect to accidents and claims arising out of the policy.
(2) That the door in question was in excellent condition and was inadvertently opened by plaintiff himself who was leaning against same.
(3) That if in fact a defect did exist in the door, it was hidden to Breaux and unknown to him.
(4) That the plaintiff was contributorily negligent in not closing the.door properly and in leaning against same.
During trial in the court below defendant’s counsel admitted medical expense liability in the amount of $500 and judgment was rendered against it in said amount together with the sum of $150 for attorney fees, or a total of $650 and costs. Plaintiff’s claim for damages for personal injuries, loss of earnings, disability and pain and suffering was disallowed. The matter is now before us on a devolutive appeal taken by the plaintiff. The defendant has answered the appeal seeking that the judgment be reversed insofar as it awards attorney .fees, on the ground that same were not prayed for in either the original or supplemental petition.
The record discloses that there were three witnesses who saw the accident — the plaintiff, Dalton J. Breaux, the former’s brother-in-law, and Mrs. Dalton J. Breaux, plaintiff’s sister. An analysis of the testimony of those who took the stand discloses the following version of how the accident occurred:
According to Newman, just before the accident he was seated on the right hand side of the front seat of Breaux’s 1952 Pontiac some four to six inches from the door. Neither his arm nor any part of his body was touching the door. He had previously ridden in the car and the door had never opened. On cross examination he testified that he had never told anyone he had leaned on the door. He testified at one point that he did not remember discussing the matter with an adjuster, but then stated that he did recall going to the office of the W. L. Gaynor Claims Adjuster Service and telling an adjuster there all about the accident. He further stated that he did not remember telling the adjuster he had been leaning against the door and denied that such was a fact. Dalton J. Breaux and he discussed the matter shortly after the accident and Breaux told him that the door had opened with his wife before. Breaux did not, however, tell him how many times this had happened.
Mrs. Breaux stated that she was standing in her front door at the time of the accident and saw its occurrence. While she did not know what caused the door to open, it had opened when she was in the car on previous occasions. This witness declared that the door had opened on her twice, at intervals of about one month apart, the last time having been three or four months before the plaintiff’s accident. The door was finally fixed by her husband some time after the accident.
Dalton J. Breaux, the remaining person who was present when the accident happened, was not called to the stand by counsel for plaintiff. Counsel for defendant, who had had this witness summoned, sought permission to call him under cross examination as a hostile witness. His request was disallowed with the result that he never testified during the trial of the case.
The trial judge stated orally that while he thought the plaintiff entitled to the sum of $500 for medical payments that he would not allow damages for loss of earnings, disability or pain and suffering as the plaintiff’s testimony had been impeached on many scores and on account of the presumption arising against him for the failure of the only other eyewitness to the accident, his brother-in-law, to take the stand. The trial judge further stated that he felt plaintiff had failed to make out his case with that degree of certainty required by law and further that he was guilty of negli-fence' himself such as to bar recovery.
The record fully substantiates the trial judge’s observation to the effect that the plaintiff was impeached on several counts. Briefly, they are as follows:
*407 (1) As stated previously, during the trial of the case the plaintiff denied that he was leaning on the right front door of the car or touching it in any manner when it flew open. However, in a statement taken by an insurance adjuster named Hon Ellis, the plaintiff stated:
“ * * * I had got in the car and closed the door myself. As far as I could tell, the door was closed good. I had been leaning against it when it flew open. * * * ”
While it is true that this statement was not signed by Newman, the adjuster testified that the plaintiff had read it over and said it was true but that he did not want to sign it because “someone told him not to sign anything.”
(2) Sometime after the accident Newman worked one day for the Coastal Water Well Company of Welsh, Louisiana. He denied that in seeking this employment he used the assumed name of “Jack Kelly.” However, James Osterlin and Ralph V. McGowen, both officials of the company, testified that Newman, when seeking the employment, introduced himself as “Jack Kelly” and allowed himself to be referred to under such name.
(3) In the discovery deposition taken of Newman by defendant’s counsel he stated that he was discharged by Coastal Water Well Service because of his arm. Then, during the trial of the case. he reversed himself completely and stated that he was discharged “because of the name.”
In view of the above and foregoing it is apparent that the trial judge was eminently correct in concluding that the plaintiff’s testimony is not worthy of belief.
In regard to the testimony of Mrs. Breaux, we note in same where she states that she was standing at the front door of their residence while her husband and her brother were backing out of the driveway. She specifically stated that her brother was not leaning against the door of the car. How she could tell this when the car was backing from the driveway is questionable in our opinion,- but she appeared to be eager in her testimony to help her brother by her unresponsive answers to direct questions. Except to say that the door had opened with her three or four months previously, Mrs. Breaux could give no details as to where or how or when and under what circumstances the said door had opened. It appears to us that she should have been able to provide some of the details of those incidents. The Lower Court appears to have given small credence to her testimony.
The Lower Court in holding for the defendant except for the medical payments, stated that plaintiff had failed to make out its case with that certainty required by law. It stated:
“The only other eye witness to the accident in the opinion of the Court was Dalton J. Breaux, brother-in-law of the plaintiff, who is present in Court this day but has failed to testify. The law presumes that his failure to testify would be against plaintiff’s right in this case.”
Dalton J. Breaux, of course, is the insured of the defendant, and ordinarily, it would be defendant’s duty to call him. However, under the circumstances that prevailed in this case, we are of the opinion that defendant was justified in not so doing while plaintiff must bear the stigma of his failure to call Breaux. Some time after the accident ' the insurance company’s adjuster interviewed Dalton Breaux at his home, and in this interview the adjuster elicited the information from him that the door had never come open before this particular occasion. A written statement to that effect was made to the insurance company. However, some two weeks later the insurance adjuster contacted Mr. Breaux and he gave a different story entirely to the effect that the right front door of the car had come open two or three times before with his wife. Thus in Breaux’s first statement, he stated that the door had never come open before and only two weeks later he told a directly contrary story. According to the adjuster, Mr. Breaux’s explanation *408 for the change of statement was that Mr. Breaux had forgotten about the incidents. The adjuster stated that when he obtained the first statement from ■ Mr. 'Breaux, Mr. •Breaux was very cooperative, but at the time the second statement was taken, the adjuster stated that Mr. Breaux “was very reticent, wouldn’t hardly discuss it.” The defendant, being confronted with this type of witness as their insured, moved to call 'Breaux as a hostile witness on cross examination. The trial Judge denied this request however. We think.,the defendant has proved a justifiable reason for not calling Breaux as a witness vouching for his credibility.
Plaintiff, on the other hand, had no such excuse for failing to call Mr. Breaux. Mr. Breaux presumably knew all of the alleged occasions in which the door of his car had come open with his wife riding in it. He had heard her. testify that she did not know when or where this had taken place. Breaux also heard the adjuster testify on the two conflicting statements. If plaintiff wanted to prove that the car door was defective on earlier occasions, we are of the opinion that he should have called Mr. Breaux.
.We are of the opinion that this situation was very much similar to a situation which arose in the case of Stewart v. Herrin Transportation Company, La.App., 37 So.2d 30, 36. In that case Mr.' and Mrs. Frank Robbins were witnesses to the accident involved. For very important reasons, defendant did not take the. testimony of the Robbins and explained why they had not done, so. The record reflects that the Robbins had threatened defendant’s counsel with unfavorable testimony unless he •yvas paid .a substantial amount to testify. In this,connection the Court stated:
•" “Counsel for defendants strenuously and', we believe, ‘ properly offered to prove the1 reason-that he1 had not obtained the testimony of Robbins and his wife. Counsel for plaintiffs just as strenuously objected throughout the-' record'tó defendants’ offering; yet made ! no offering nor gave any reason as to why plaintiff had not secured or attempted to secure the testimony of Robbins and his wife. The record contains sufficient to exonerate the defendants for not attempting to take the testimony of Frank Robbins or his wife. Therefore, such failure on the part of defendant cannot be construed against them. However, we believe that the failure of the plaintiff to attempt to secure the testimony of Robbins and his wife, or to offer a valid reason for not so doing should be taken into consideration, and the Court would be justified in presuming that the testimony of Robbins and his wife ■would have been unfavorable to plaintiff. * * * ”
See also the case of Chapman v. Travelers Indemnity Company, La.App., 45 So.2d 557.
In view of the fact that Mrs. Breaux’s testimony is not sufficient to prove the condition of the car with that certainty as is required bjf law, coupled with the failure of plaintiff to have Mr. Breaux to testify, it logically follows that the plaintiff has failed to prove his case by a preponderance of the evidence and we cannot ■say that.the Lower Court was manifestly erroneous.
The only question remaining'concerns the award for attorney fees and 12% penalty. As stated previously, while the allegation was made in the supplemental petition that plaintiff was entitled to the penalties and attorney fees provided in LSA-R.S. 22:658, the defendant answered the appeal stating that as they were not prayed for in either the original or supplemental petition, they should not be awarded. We note, however, in plaintiff’s supplemental petition that he closes his prayer with a plea- “for all general and equitable relief.” We think the answer to this problem is well settled in the jurisprudence of this state and we quote with approval what Justice Brunot stated in the case of Le Goaster v. Lafon Asylum, 159 La. 855, 106 So. 329, 330:
*409 “Appellants contend that they prayed for an injunction only, and therefore no other issue was before the court. The prayer of their petition concludes with the words ‘and for' general and equitable relief.’ The purpose of a suit and the matters in dispute are to be ascertained from the averments of the petition in conjunction with the prayer, and, where there is a prayer for general relief, the court may act on the averments.
“‘The object or purpose of a suit or the matter in dispute should be determined not by the prayer of the petition alone, but from the body of the petition in conjunction with the prayer.
“ ‘Even if the prayer does not ask in plain terms the decree that the allegations of the petition would clearly warrant, such omission will not prejudice the petitioner’s right to recover on the averments of his petition, where they are sufficient to sustain the proper action and decree, and there is a prayer for general relief.’ State ex rel. Levet v. Lapeyrollerie, 38 La.Ann. [912] 913.
“This has been the rule in Louisiana.
As far back as 1834 this court held that—
“ ‘The prayer for general relief will enable the Supreme Court to examine the case on its merits.’ Gottschalk v. De la Rosa, 6 La. 219.
“In later cases the court said:
“ ‘While plaintiff may not be entitled to the specific relief prayed for, his prayer for general relief authorizes all ordinary decrees which the pleadings and evidence may justify.’ Stark v. Howcott, 118 La. 489, 43 So. 61.
“ ‘A prayer for general relief authorizes all ordinary decrees which the pleadings and evidence may justify.’ Legier v. Braughn, 123 La. 463, 49 So. 22; Kinder v. Scharff, 125 La. 594, 51 So. 654.”
See also Stanga v. Lake Superior Piling Co. 214 La. 237, 36 So.2d 778.
As stated previously defendant’s counsel admitted medical expense liability in the amount of $500. There is no question that a demand for the payment of same was made against the insurance company. A copy of the insurance policy in question was filed in the record and we note in Section 10 under Conditions the following:
“10. Medical Reports; Proof and Payment of Claim — Coverage C:
“As soon as practicable the injured person or someone on his behalf shall give to the company written proof of. claim, under oath if required, and shall, after each- request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit, to physical examination, by physicians selected by the company when and as often as the company may , reasonably require.
“The company may pay .the injured person or any person or organization rendering the services and such payment shall reduce the amount páyable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the insured or, except hereunder, of the company.”
We believe that LSA-R.S. 22:658 is the applicable statute in regards to penalties and attorney fees for medical payment insurance found in automobile combination policies as was stated in the case of Wagner v. Hartford Accident & Indemnity Co., La. App., 81 So.2d 580. Said LSA-R.S. 22:658 provides as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 above shall pay the amount of any claim due any insured within sixty days after receipt of satisfactory proofs of loss from the insured or any party in interest. Failure to make such payment within sixty *410 days after receipt of such proofs and demand therefore when such failure is found to be arbitrary, capricious or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twelve per cent damages on the total amount of the loss, payable to the insured, together with all reasonable attorney’s fees for the prosecution and collection of such loss.”
The record before us is absolutely devoid of any evidence to the effect that the insurance company requested of plaintiff to furnish written proof of claim under oath nor was plaintiff ever requested to execute authorization to enable the company to obtain medical reports and copies of same for the doctors treating and attending to plaintiff. Therefore under the circumstances we are of the opinion that plaintiff has complied with all of the provisions as provided in the insurance policy and that the action of the defendant under the circumstances was arbitrary, capricious and without probable cause in so far as the medical payments provision of said policy. See Sims v. National Casualty Company, La.App., 43 So.2d 26. Therefore under those circumstances we are of the opinion that plaintiff is entitled to the 12% penalty and to the $150 attorney’s fees as granted by the Lower Court. The bulk of the record is made up in attempting to prove plaintiff’s tort claim and not the claim due under the medical payments provision of the policy and for that' reason we think that the $150 attorney’s fee awarded by the Lower Court is adequate.
For the reasons assigned, the Judgment appealed from should be amended so as to include the 12% penalties as provided in the statute and in all other respects the same is affirmed.
Judgment amended and as amended affirmed.