112 So.2d 125 (1959)
William W. UPSHAW, Plaintiff-Appellee,
v.
GREAT AMERICAN INDEMNITY COMPANY, Defendant-Appellant, Confederate Memorial Medical Center, Intervenor-Appellee.
No. 9020.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1959.
*127 Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for appellant.
Bethard & Bethard, Coushatta, for appellee.
Nesib Nader, Shreveport, for intervenor.
GLADNEY, Judge.
This suit presents a tort claim by a guest injured in an automobile which was owned and operated by James A. Coffey. The latter's liability insurer, the sole defendant, opposes recovery primarily on a plea of contributory negligence. After a trial a judgment was rendered for the plaintiff and recognizing, inter alia, a claim of $169.92 by the Confederate Memorial Hospital for medical services. The insurer has appealed from the decree and appellee has filed an answer to the appeal, praying the award be increased.
*128 The record discloses certain undisputed facts. Coffey, an oil field worker, had planned a night fishing trip after work and for the purpose met with his brother-in-law, William Upshaw and a friend, C. L. Price, at Coffey's home in Shreveport shortly prior to midnight. The three entered a Nash station wagon and with Coffey driving had gone six or seven miles when the vehicle ran off of the highway out of control and into a bayou where it became partially submerged in the stream. The parties opened a door and succeeded in getting out of the water. No one was hurt except Upshaw, who testified he was thrown against the dashboard and windshield, and believes he was kicked in the back of the neck, and received injuries to his nose, left ear and neck. It is admitted Coffey lost control of the car because he fell asleep and other uncontradicted testimony shows that at the same time Upshaw and Price were also asleep. The record does not reflect anyone had been drinking.
After receiving notice of the accident in which Upshaw was injured, the attorney for the insurer contacted Coffey and elicited from the insured information which was sufficient in his opinion to support a plea of contributory negligence against the demands of Upshaw. Subsequently, but prior to trial of the case, the insurer canceled its automobile insurance with Coffey, who, because of such action, became angered with the defendant and its attorney.
Upon trial of the case when Coffey was called as a witness for the insured, he either refused to confirm statements attributed to him by respondent's attorney, or attempted to evade answering questions pertinent thereto. The conduct of Coffey caused the attorney to plead surprise and the lawyer was allowed to cross-examine his witness. At this stage of the trial respondent attempted to file an amended answer but this pleading was not permitted by the trial judge, whose ruling is not questioned. As the only alternative, an exception of no cause or right of action was then filed. The court did consider the implications raised by the exception. The exception avers:
"The allegations of ultimate fact in the petition do show that this action against the defendant insurance company has for its basis the terms and provisions of Policy No. MA 36-51-42 issued by the defendant to James Coffey which policy of insurance provides, among other things, in paragraph 18 of the conditions, as follows:
"`Assistance and cooperation of the insured (Coverages A, B, D, E, F, G, H, I and J)
"`The insured shall cooperate with the Company, and upon company's request shall attend hearings and trials and shall assist effecting settlements securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own costs, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to other as shall be imperative at the time of the accident.'
"That the evidence adduced on the trial of this case shows that James A. Coffey, the party to whom the defendant issued its policy of insurance, and the party who was driving the vehicle in question at the time of the accident in question, was interviewed by counsel representing the defendant. In March, 1958, after the suit had been filed, during which interview said James A. Coffey informed counsel for defendant that at the time James A. Coffey, plaintiff W. W. Upshaw, and one C. L. Price, were preparing to leave from said Coffey's home to go on a fishing trip, he asked one of the others to drive saying that he was `knocked out' because he had worked all day and driven in from the job; that he informed counsel for the defendant *129 that previous to that time he and plaintiff, W. W. Upshaw, had discussed his driving with plaintiff describing his driving as like a `maniac' and that plaintiff had often told J. A. Coffey that he ought to slow down that he drives too fast; all of which information was used as a basis for the defense as set forth in the answer filed on behalf of the defendant to the effect that plaintiff got into Coffey's car, with Coffey driving to make a trip of several miles, despite the fact that he well knew Coffey had just gotten off of a full day's work and had no sleep or rest; and that plaintiff, the brother-in-law of James A. Coffey knows of his own knowledge that James Coffey is a habitual fast driver, habitually driving at speeds in excess of the legal speed limits and despite this he did not warn Coffey against fast driving, nor did he stay awake to protect himself against fast and excessive speeds by Coffey as they were on their journey.
"That upon the trial of the case James A. Coffey testified that he had no conversation with either plaintiff or C. L. Price about someone else driving on the trip in question for the reason that he was `knocked out'; he further testified that plaintiff had never prior to the occurrence of the accident in question, said anything to J. A. Coffey about driving fast and he further testified that he was driving at a speed of 50 to 60 miles per hour; and then testified that he did tell counsel for the defendant, during the interview at his home in March, that he was driving at a speed of 70 miles per hour; that he had asked someone else to drive the car because he was `knocked out', and that plaintiff had previously complained about his fast driving.
"That the inconsistent versions of the circumstances of the accident in question, as given to counsel for the defendant constituted a breach of the cooperation clause in the policy of insurance which forms the basis for plaintiff's action against the defendant."
In ruling upon the exception, the district judge said in part:
"We do not think that the plea of lack of cooperation should be sustained on the evidence in this case, especially in view of the fact that no written statement was taken from the assured and no agreement between counsel and Mr. Coffey as to the exact statement that was made at the time of their conversation. We have no doubt that Mr. Baker was told by Mr. Coffey that he was traveling 70 miles per hour, but since Mr. Baker did not make any allegation based on this statement, the lack of cooperation cannot be urged, as we see nothing in the evidence inconsistent with the pleadings in the case."
We do not find error in the ruling. It would appear Coffey was a hostile witness, such hostility no doubt having been brought about by the cancellation of his insurance by the insurer. The record discloses the district judge, in addition to permitting counsel to cross-examine the witness and thus disclose the true nature of the testimony also permitted counsel to take the witness stand and contradict the testimony of his own witness. Having so proceeded, the court had full opportunity to evaluate the evidence and its effect upon the merits of the plea of contributory negligence.
The issue presented by appellant could not have been resolved by a ruling on the exception. Peremptory exceptions founded on law must show a plaintiff cannot maintain his action either because it is prescribed or because the cause of action does not exist. It may be filed at any stage of the proceedings. Code of Practice, Arts. 345, 346 and 902. The exception of *130 no cause of action addresses itself to the sufficiency in law of the petition and exhibits attached to it and is triable on the face of the papers. Trumbaturi v. Katz & Besthoff, Ltd., 1934, 180 La. 915, 158 So. 16; Rome v. London & Lancashire Indemnity Company of America, 1935, 181 La. 630, 160 So. 121. In determining whether an exception such as filed herein is well founded, the court may consider evidence submitted in its support in cases where the exception is filed after evidence has been taken and the allegations of the petition have been enlarged by such evidence which may have been received without objection. Bell v. Globe Lumber Company, Ltd., 1902, 107 La. 725, 31 So. 994; McQueen v. Tremont Lumber Company, La.App.1934, 151 So. 683; Sustendal v. Weber, La.App.1954, 76 So.2d 8.
In the trial court it was urged by counsel for plaintiff that the contention of the defendant was an affirmative defense and proper pleading requires it be specially pleaded. The argument has considerable merit and if the trial judge had sustained the exception a serious question would have been presented. This court does not have the right to broaden the pleadings for consideration of an exception of no cause or right of action. In Roy v. Mutual Rice Company of Louisiana, 1933, 177 La. 883, 149 So. 508, 510, the Supreme Court of Louisiana said:
"We wish, at the outset, to make it very plain that, in considering the exception of no right or cause of action in this case, the allegations of wellpleaded facts as set forth in plaintiff's petition must be taken as true, for the purpose of disposing of this exception, and not the facts found by the Court of Appeal, First Circuit, in passing upon the merits of the case."
The issue so tendered, in our opinion, may be considered by the court only to determine if there was collusion or fraud between the insured and the plaintiff, with sufficient basis for a remand or new trial.
The cooperation clause of the policy is not repugnant to any law of this state and may be enforced in appropriate cases where the evidence shows an insurer is prejudiced in its defense by the actions of the insured. The duty of the court is to be alert to protect insurers in circumstances where close family relationship or association tend to ally the sympathy of the insured to those with whom the insured may be liable, and normally, in evaluating credibility, such factors are taken into account. We must, on the other hand, recognize that insurance policies protect not only the insured, but the general public, and insurers should not escape their liability except through conduct on the part of the insured which materially prejudices them. In 29 American Jurisprudence, verbo "Insurance", 793, 794, we find the following statement of law:
"793. Modification or Repudiation of Prior Statements to Insurer.The mere fact that the insured modifies or repudiates statements as to the accident and attending circumstances favorable to the defense does not necessarily constitute a breach of a cooperation clause of a liability policy, but such modification or repudiation may constitute a breach if fraudulent or a result of a collusive attempt to help the injured person.
"794. Variance between Statements and Subsequent Statements or Testimony.In determining whether a variance between statements made to an insurer and subsequent statements or testimony constitutes a failure to cooperate with the insurer, consideration should be given to the extent of such variance or discrepancy, since a mere discrepancy in minor detail or an honest mistake between the several statements of the facts surrounding the accident is not sufficient to avoid the policy, whereas a material, intentional, or fraudulent variation does effect a failure to co-operate."
*131 We find the evidence is insufficient to sustain the position of appellant. Coffey's action and demeanor, even though it may well be classified as improper conduct, in our opinion, was not prejudicial to the insurer. True, counsel for defendant considered Coffey's repudiated statements as strongly tending to support the plea of contributory negligence, but the plea is not made out by a preponderance of the evidence. The accident resulted from the fault of Coffey in going to sleep while driving. His sworn testimony reveals that prior to losing control of the vehicle he was not traveling in excess of the speed limit. Speed was not a causative factor creating liability on the policy. Furthermore, Upshaw denied he regarded Coffey as an unsafe driver. These findings, after full consideration given to the record, do not indicate fraud or collusion between the insured and his brother-in-law, nor have the variable statements of Coffey before and during trial, in our opinion, materially prejudiced respondent's plea of contributory negligence.
It is argued the tort claim of Upshaw should be denied because of his knowledge prior to the fishing trip that his brother-in-law was a reckless and dangerous driver, and secondly because Coffey had warned of his tired condition and requested to be relieved of driving. Cited in support of this postulation are the cases of Weddle v. Phelan, La.App.1937, 177 So. 407 and Benson v. Metropolitan Casualty Insurance Company of New York, La.App.1955, 79 So.2d 345. The question raised in Weddle v. Phelan was whether or not the plaintiff, a guest in a bus, who was asleep when a collision occurred, affirmatively showed his own negligence in putting himself in a position where he could not protect himself from the alleged negligence of his host, Phelan, in his continuing act in driving on the wrong side of the road without proper lights and at an excessive rate of speed. In rejecting the defense, the court found the guest had a right to assume, in the absence of special circumstances of danger, that the driver was properly operating the bus in which he was an invited guest, and cited the law on this point as stated in 4 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Edition), p. 232, § 2432, as follows:
"It does not necessarily show negligence on the part of a passenger in an automobile that he was sleeping before and at the time of an accident caused by the negligence of the driver which results in injury to such passenger. However, a passenger cannot escape the obligation of due care whenever the occasion arises for its exercise on the plea of having fallen asleep, if an ordinarily prudent person would not have fallen asleep under the same or similar circumstances." [177 So. 409.]
There was considered in Benson v. Metropolitan Casualty Insurance Company of New York a similar plea of contributory negligence, in which the defendant contended plaintiff was familiar with the insured's driving to which he made no protest, especially as to the excessive speed at which the car was being driven. The evidence indicated that immediately prior to the collision Benson may have been asleep and dozing. This court acknowledged with approval the rule of law as above stated in Blashfield and the ruling in Weddle v. Phelan, but found after consideration of the evidence that plaintiff had a right to reasonably rely upon the driver for the exercise of necessary care and precaution.
There is, of course, recognition by the court of the obligation imposed upon a guest passenger of a motor vehicle to avoid accident or injury to himself under certain conditions. In White v. State Farm Mutual Automobile Insurance Company, 1953, 222 La. 994, 64 So.2d 245, 249, 250, 42 A.L.R.2d 338, the Supreme Court of Louisiana said of that responsibility:
"That duty has been tersely said by this Court, in Delaune v. Breaux, supra [174 La. 43, 139 So. 753], to exist *132 in cases where the guest `* * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or when a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver * * *.' 174 La. at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time when the driver is able to avert it, his dereliction may be said to be a contributing cause of any injury he may sustain.
"In addition to these instances of contributory negligence, recovery of a guest may be refused when he has knowingly assumed a particular risk, such as riding with an intoxicated driver or one otherwise incompetent. This doctrine of assumption of risk has sometimes been applied indiscriminately by the courts as contributory negligence. James, Assumption of Risk, 61 Yale L.J. 141 (1952). * * *"
The record does not indicate Coffey was driving at an excessive rate of speed or that speed was a contributing cause to the accident. The evidence reflects only that the injuries to plaintiff were occasioned by Coffey falling asleep while driving. Nor do we think the evidence proves Upshaw was apprised of such facts that a prudent person acting under similar circumstances would necessarily have remained awake upon anticipation that Coffey might fall asleep. Plaintiff, therefore, had the right, in our opinion, to rely upon Coffey driving the automobile safely to its destination. We hold the plea of contributory negligence was properly rejected by the trial court.
This brings us to a consideration of the third assignment of error by appellant, relating to the matter of quantum. In written reasons for judgment the judge a quo itemized the award to Upshaw as $1,870 for loss of wages, $1,000 for a broken nose, $1,000 for an infected ear, and medical expenses of $603.92, including the amount claimed in the intervention by the Confederate Memorial Hospital, making a total award of $4,473.92.
The petition described Upshaw's injuries as shock, an injury to the nose with deviated septum, an injury to his left ear with loss of hearing, a whiplash injury to his head and neck, and cuts and abrasions. A claim was made for loss of wages of $107 per week, including loss of income to date of trial and loss of future income. Also, medical expenses past and future were claimed. Plaintiff alleged the defendant insurer in its contract with Coffey agreed to pay all medical expenses incurred by anyone injured in Coffey's automobile, regardless of the liability or negligence of its insured, and, because of its failure to pay petitioner's medical expenses within thirty days after notice and demand, defendant should be assessed penalties as provided under LSA-R.S. 22:657.
Plaintiff testified that when the station wagon came to a sudden stop in the water, he was thrown forward into the windshield and dashboard striking his nose and head and that while he and the other occupants of the vehicle were endeavoring to scramble out of the car, he was either kicked or something hit his left ear and the back of his neck. A short while after the accident he said his nose and left ear began bleeding. He asserted that because of getting wet and cold he took influenza and was treated at the L'Herrison Clinic of Coushatta. Dr. L'Herrison treated Upshaw for the neck condition from March 15 to March 30, 1957, and once again on August 28.
No reason is given as to why the testimony of Dr. L'Herrison was not taken. Treatment according to plaintiff, consisted of medicine and applications of heat, his complaint being principally of pain in his neck. During some time in May, 1957, plaintiff sought treatment for an infected left ear by Dr. Frank L. Bryant, and *133 thereafter Upshaw made three or four calls to Dr. Bryant's office. Although Upshaw's principal complaint was as to his ear, Dr. Bryant found deviation of the septum in the nose causing obstruction in the nasal passage with consequent impairment of breathing. Dr. Bryant classified the infection in the ear as being chronic and discovered that the eardrum was punctured. From history elicited at that time from the plaintiff, the doctor ascertained the condition of the ear was of long standing, dating back to 1950. Medicine was given which relieved the infection. Dr. Bryant recommended an operation on the nose, the estimated cost of which plaintiff considered prohibitive and he did not have this done until March of 1958, when the operation was performed at the Confederate Memorial Hospital by Drs. LeBlanc and Riggs. The testimony of Dr. Riggs relating to plaintiff's ear condition also disclosed that the damage to plaintiff's ear existed long prior to the accident. The injury to plaintiff's nose was corrected by the operation at the Confederate Memorial Hospital, but undoubtedly plaintiff suffered considerable inconvenience and discomfort by reason of his nose injury for a period of approximately a year.
The evidence does not indicate to our satisfaction plaintiff suffered a serious injury to his neck in the nature of a whiplash injury. Although the cervical vertebrae were X-rayed by Dr. L'Herrison, and by Dr. Ray E. King and Dr. D. F. Overdyke, Jr., orthopedists, and again by Dr. Heinz K. Faludi, the effect of the medical opinion is that if plaintiff suffered a whiplash injury it was extremely mild. Upshaw testified Dr. L'Herrison was of the opinion at the end of March plaintiff could return to his work. When examined on May 2, 1956, by Dr. Ray E. King, the latter was of the opinion plaintiff was without objective symptoms and if he sustained a whiplash injury it was extremely mild.
In October and November preceding the filing of this suit on June 24, 1958, plaintiff was examined solely for evaluation purposes by Dr. D. F. Overdyke, Jr., and Dr. Heinz K. Faludi. Dr. Overdyke, an orthopedist, reported plaintiff was still complaining of pain in the neck which the examiner attributed to a whiplash injury received in the accident. He found no weakness in the upper extremities of plaintiff's body. The doctor testified Upshaw was advised he would perhaps have some pain and discomfort on the maximum of exertion but to continue to work unless symptoms became too severe. The plaintiff contradicted this testimony, saying the doctor advised him not to work for a period of four months and this reason was given by Upshaw as to his non-employment over a considerable period of time. Reports of the examinations of Drs. Overdyke and Faludi make it clear their opinions were entirely predicated on the complaints of the appellee. If, as the record indicates, plaintiff was suffering from nothing more than a mild cervical sprain, we doubt his inability to work over so long a period.
Defendant seriously objects to the inclusion of some of the doctors' bills on the ground that the professional attention so given was unnecessary for treatment purposes and was connected solely with the trial of the case. The record indicates Drs. Overdyke and Faludi were engaged only for the purpose of giving expert opinion to the court and consequently, their services were not connected with any beneficial treatment of the plaintiff. Their bills, in our opinion, are not chargeable to the defendant.
Commenting on the lack of certainty as to proof of damages sustained by plaintiff in this case, the trial judge commented that the hole in plaintiff's eardrum was not caused by the accident but it was his opinion plaintiff suffered from an infection of the ear as a result of the accident. The judge further stated he was unable to definitely fix the loss of wages by plaintiff who was not employed at the time of the accident and whose testimony that he was unable to work by reason of his physical *134 disability subsequent to the accident was not corroborated by anyone. In attempting to compute plaintiff's loss of wages, the judge based his "guess", as he termed the amount, on an inference that Dr. Overdyke recommended to Upshaw a four months' cessation of work. This testimony of plaintiff, in our opinion, is not sustained by the record. We are of the opinion there is sufficient evidence to sustain a finding that plaintiff suffered a rather severe injury to his nose, that he suffered an infection to his left ear after the accident, but which was not caused by the accident, and further, we find Upshaw sustained a mild neck sprain or whiplash injury. The loss of wages to any degree of certainty has not been sufficiently proven. There can be no doubt, however, plaintiff because of his neck and nose injuries was totally disabled from working for at least two months.
Appellee raises the further question of entitlement to penalties claimed under LSA-R.S. 22:657 for the failure of the insurance company to pay the amounts due within thirty days. It should be made clear at this point appellee is in error as to the application of Section 657. Such a claim for medical benefits may be properly tendered in this case not under Section 657, but under 658. Under a clause of coverage, C-1 of Coffey's policy with appellant, in force at the time of the accident, it is provided:
"Basic Medical Payments.To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from the automobile, provided the automobile is being used by the named insured or his spouse if a resident of the same household, or with the permission of either."
The Insurance Code as adopted and found in LSA-R.S. 22:1 et seq., provides for several kinds of insurance, among which are classified and defined in Section Six thereof:
"(2) Health and accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto.
"(3) Vehicle. Insurance against loss or damage to any land vehicle or aircraft or any draft or riding animal or to property while contained therein or thereon or being loaded or unloaded therein or therefrom, and against any loss or liability resulting from or incident to ownership, maintenance, or use of any such vehicle or aircraft or animal.
"Insurance against accidental death or accidental injury to individuals including the named insured while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as part of insurance on the vehicle, aircraft, or draft or riding animal, shall be deemed to be vehicle insurance."
LSA-R.S. 22:656 imposes as a penalty interest at the rate of six per cent (6%) annually where death claims arising under policies of life insurance are not settled within sixty days after receipt of due proof of death where such failure to pay is without just cause. Section 657 provides where payment under the terms of "the health and accident" contracts are not paid within thirty days after written notice and proof of claim, the insurer shall be subject to a penalty of double the amount of the health and accident benefits.
*135 LSA-R.S. 22:658 provides that:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 above shall pay the amount of any claim due any insured within sixty days after receipt of satisfactory proofs of loss from the insured or any party in interest." (Emphasis supplied.)
The applicability of LSA-R.S. 22:658 to a claim for medical expenses arising from an accident covered by a vehicle liability insurance policy was recognized in Wagner v. Hartford Accident & Indemnity Company, La.App.1955, 81 So.2d 580. The Supreme Court denied a writ in this case, and the ruling has been approved in Newman v. Fidelity Mutual Insurance Company, La.App.1956, 86 So.2d 404 and Distefano v. Delta Fire & Casualty Company, La.App.1957, 98 So.2d 310.
There can be no doubt LSA-R.S. 22:658 embraces plaintiff's claim for medical benefits by reason of the express provisions of C-1 of the defendant's policy. The penalties therein prescribed, however, may not be assessed unless the insurer has failed to pay the amount of the claim "within sixty days after receipt of satisfactory proofs of loss from the insured or any party in interest."
The evidence offered to show the insurer received satisfactory proof of plaintiff's medical expenses consists of the testimony of Upshaw that he talked with an insurance adjuster concerning a settlement, and two letters of demand from appellee's attorney, all of which evidence, we think, falls short of compliance with the policy provisions. The claim for penalties is disapproved.
Our conclusion is appellant has failed to show it is entitled to a reversal or remand upon the grounds urged in its exception of no cause and no right of action, and we also find the special plea of contributory negligence is not supported by proof. The amount of the award in favor of plaintiff has been modified and reduced to the total sum of $3,887.92, including $169.98 due the Confederate Memorial Hospital, and as so amended, the judgment from which appealed is affirmed at appellant's costs.