LOTTINGER, Judge.
This is a suit, in tort, by petitioner, Alfred L. Lea against various defendants. The Defendants are Earl Cannon, in whose truck the petitioner was riding as a guest passenger at the time of the accident; Southern Farm Bureau Casualty Insurance Company, the liability insurer of the Cannon truck; J. C. Martin, the operator of a truck which was involved in the accident, his employer, Travis Alford, the owner of the truck, and his liability insurer, Lumber Mutual Fire Insurance Company; and Arnold Martin, the owner and operator of the truck involved in the collision and his insurer, Southern Farm Bureau Casualty Insurance Company. The petitioner seeks damages in the sum of $173,860.00. The Lower Court rendered judgment holding that the negligence of Earl Cannon was the proximate cause of the accident, and rendered judgment against him and his insurer in the sum of $7,923.00, and dismissed the action as against the other defendants. From this judgment the defendant, Earl Cannon and his insurer filed a suspensive appeal. This appeal was answered by petitioner seeking an increase in award, and the petitioner also filed an appeal from the ruling of the Court in dismissing the action with regard to the other parties defendant.
The facts show that during the early morning of April 9, 1959, Alfred L. Lea, the petitioner and Leo H. Bullock were on their way to work at Hilltop Creamery, Inc., Washington Parish, Louisiana., They were proceeding to work in a truck owned and operated by petitioner when they had a flat tire. The driver, the petitioner herein, *656 pulled his truck to the side of the highway, and for a period of some fifteen or twenty minutes the two parties discussed the question of whether or not they should attempt to borrow a car to continue their journey to work. Upon noticing the approach of the Cannon truck in the same direction, and with the same destination as petitioner and his passenger, petitioner got out of his truck and flagged defendant Earl Cannon to a stop, with his flashlight. According to the testimony of the parties, Cannon was traveling some twenty to twenty-five miles per hour when petitioner flagged him and petitioner and Bullock heard Cannon cut off the accelerator and shut off the motor in an attempt to stop. The Cannon vehicle came to a stop some three hundred feet down the road.
It is at this point of time that there is some discrepancy in the testimony of the parties concerned. Mr. Cannon testified that he stopped his truck by stacking the gears, as he had no brakes. He stated, that after stopping some three hundred feet down the road, he put his truck in reverse and backed about half way to the Lea truck. He then got out of his truck and hollered to Lea and Cannon that “I didn’t have brake one”. At this time Cannon stated that Lea and Bullock were walking toward him side by side and one of them yelled back “You got a reverse”. Mr. Cannon testified that this indicated to him that they desired a ride regardless of the fact that he had no brakes.
Petitioner, Alfred Lea, testified that after the Cannon truck came to a stop he got back into the cab of his vehicle to get his sandwich and his key, and that he heard no discussion whatsoever at that time to the effect that the Cannon vehicle was without brakes. Leo Bullock, on the other hand, testified that when the Cannon truck was coming to a stop he got out of the Lea truck and went to the rear thereof to get a can of milk, and that he and petitioner were ■walking toward the Cannon truck within two to three feet of each other when Cannon yelled that he had no brakes. Mr. Bullock testified that he yelled back to Mr. Cannon relative to him having a reverse.
In any event, the facts show, and it was testified by all three of these witnesses, that either upon entering the Cannon truck, or after proceeding only a short distance, a; discussion was held in which Cannon advised them that he had no brakes, and that he had almost run into a herd of cattle some distance further along the highway because of the fact that he had no brakes. At the time of this discussion the petitioner, Lea, was sitting in the middle between Cannon, the driver, and Bullock, the other passenger.
The Cannon truck traveled along the Areola Road for a distance of seven miles. There is some evidence that another discussion might have taken place with regard to the brakes during this period of time, however, the parties all acknowledged that upon approaching the Sylvest Road, which is a gravel road leading to the dairy, Cannon pumped his brakes to try to get a pedal' build-up but was unsuccessful. In order to slow down to make the turn, it was necessary that he reduce his gears. After making the turn into the Sylvest Road, the truck proceeded some two or two and one-half miles to the scene of the accident.
The accident occurred at approximately 6:00 o’clock A.M. The road was wet as there had been intermittent showers. The Sylvest Road, upon which the accident occurred, was a hilly graveled road. Upon approaching the scene of the accident, the Cannon truck rounded a curve at the top-of a small hill. As they rounded the curve, at a distance of some 400 to 450 feet, the-occupants of the Cannon truck saw the two. Martin trucks parked side by side in the hollow, or bottom of the hill. These trucks were occupying approximately the entire width of the road, and the facts show that the drivers thereof had stopped a moment before to discuss personal matters. Because of the lack of brakes, Cannon was unable to stop to avoid the accident, and he proceeded down the hill apparently at increased *657 speed, and attempted to shift gears to slow down the motion of his vehicle. The petitioner himself testified that he first saw the Martin trucks clearly at a distance of some 300 to 350 feet at which time, from his testimony, it appears that the petitioner became extremely excited. The Martins, upon seeing the impending accident, attempted to pull their trucks apart so as to give the Cannon vehicle room to pass between them. Arnold Martin, whose truck was headed in the direction of the Cannon vehicle, pulled forward some two truck lengths before the time of the impact. J. C. Martin’s truck stalled, however, and he was unable to move prior to impact. Upon reaching the bottom of the hill, the Cannon truck was unable to successfully pass between the two Martin trucks, and the impact was with the rear left end of the J. C. Martin truck. Prior to the impact, Leo Bullock, who was sitting on the extreme right of the Cannon truck, jumped to the road. The petitioner remained in the truck to the point of impact and sustained the injuries which are the basis of this suit.
The defendants herein have asserted the doctrine of assumption of risk or independent contributory negligence as against the petitioner, inasmuch as the evidence discloses that the petitioner knew or should have known that there were no brakes on the truck in which he was riding as a guest passenger. The doctrine of assumption risk is a special defense and must be specially pleaded, and the burden of establishing same rests upon the party who alleges it. White v. State Farm Mutual Auto Insurance Company, 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Upshaw v. Great American Indemnity Company, La.App., 112 So.2d 125.
In 61 C.J.S. Motor Vehicles § 486, at Page 95, the rule is stated as follows:
“There are three elements of the doctrine of assumption of risk:
(1) A hazard or danger inconsistent with the safety of the occupant.
(2) Knowledge or appreciation of the hazard by the occupant.
(3) Acquiescence or a willingness to proceed in the face of danger.”
The petitioner himself admits that: on at least three occasions he received some-indication or warning that the Cannon truck-was without brakes. This first warning-was when the driver of the Cannon truck was required to cut off the accelerator and', the motor in bringing the truck to a halt so as to pick up petitioner and Bullock. The-second occasion was after petitioner and’. Bullock first entered the Cannon truck and' Cannon informed them that he had no. brakes because of which he almost ran into, a herd of cattle. After this discussion, they traveled almost seven miles until the third’ warning, at which time a discussion took: place relative to the lack of brakes, and it: was necessary for Cannon to pump the-brake pedal, to no avail, and then to shift to lower gears to slow the speed of the-truck so that he might make the turn into.. Sylvest Road. In spite of these incidents,, or warnings, the petitioner testified that at: no time did he request to be let out of the-Cannon truck. It was shown that both the-Arcola and Sylvest Roads were rather - thickly populated, and that Lea knew many • of the inhabitants along the roadway travel-led by the Cannon truck, and he certainly - had an opportunity to get out of the truck; and seek a ride to his work from some other, source.
All three elements of the doctrine of assumption of risk, supra are present, i. e.,. that there was a hazard or danger present, that petitioner knew of the danger, and that-he acquiesced or showed a willingness to. proceed in the face of the danger, by his-failure to ask that he be discharged fromt the Cannon truck.
The present case was a companion suit-to one filed by Bullock for the same acci— dent. In the Bullock case the Lower Court; held him guilty under the assumption of risk doctrine, and dismissed his suit. We be— *658 Heve that the same should have been done in the present suit, and the failure thereof constitutes reversable error.
Because of our holding that the petitioner assumed the risk involved in traveling in a vehicle without brakes, the questions as to the negligence or lack of negligence of the various parties defendant become moot.
For the reasons hereinabove assigned, the judgment of the Lower Court is reversed insofar as it casts Earl Cannon and his insurer, and the petitioner’s suit as against all defendants is dismissed at petitioner’s cost.
Judgment reversed.