DOMENGEAUX, Judge.
This is a suit in tort wherein plaintiffs appeal from a district court judgment dismissing their suit.
Plaintiff Adan P. Trahan was the owner of an establishment in Creole, Louisiana, known as Man’s Cafe & Bar, and on January 17, 1970 his wife, Virgie Trahan, also a plaintiff, was the operator thereof.
The evidence shows that on the above said date defendant Clayton Nunez had been making the rounds of various drinking places in the area, accompanied in a separate vehicle by Adam Kershaw and his son Tommy Kershaw. Eventually they wound up in Man’s Cafe & Bar, wherein they joined John D. Clement, Sr. and Lawston McEvers.
Man’s Cafe & Bar is divided into two sections, one containing the bar and the other containing a number of tables at which food is served on certain days of the week. It was in this latter section that the five were seated, at a table, when the difficulty arose.
From here on the versions of plaintiffs and defendant vary, but we find the facts to be as follows: Defendant and his two companions had apparently imbibed liberally of alcoholic beverages prior to their arrival at Man’s and they consumed two beers each in that establishment. The language became loud and colorful, and eventually defendant and Adam Kershaw, having entered into a dispute over their respective physical prowess, engaged in a bit of horseplay. The result was that a chair was tipped over and Mrs. Trahan approached in an effort to quiet them. She tapped defendant on the shoulder and asked him to behave himself, as it appeared that he was the main instigator of the roudiness, Mr. Kershaw already having made the same request of him. At that point, says Mrs. Trahan, defendant threw back his elbows, striking her in the breast and producing the injuries complained of.
The defendant admitted that he was boisterous but denied that he struck Mrs. Trahan. He stated that Mrs. Trahan told them to sit down and be quiet and that they complied. Then he testified as follows :
“ * * * she came over there to the table, shook her finger in my face, told me I was nothing but a troublemaker and a big mouth and there wasn’t nothing to me, and I told her all monkeys and clowns needed to be in a cage or behind the bar, for her to get on back there, because she kind of looked like a clown to me. So she did. I guess she went and called the law then. * * * ”
A deputy sheriff arrived on the scene and spoke to defendant and his compan *152 ions. They then left the premises, but sometime later defendant returned, had another beer, and departed once more.
Although no one present actually saw the blow delivered, save Mrs. Trahan, several people testified to having seen the effects thereof. John Clement, Jr., testified that Mrs. Trahan showed him the area where she had been struck and that he saw a red spot thereon. Likewise Linda Faye Trahan testified in the same manner. Both said that Mrs. Trahan appeared extremely distraught and complained of pain in her chest following the blow.
On the suggestion of Mr. Clement Mrs. Trahan went to the South Cameron Memorial Hospital where she was seen by Dr. George Dix.
Dr. Dix testified that although there was no discoloration present in the affected area, there was apparent tenderness on palpation thereof. He explained that blue or black coloring would have appeared later if it was going to appear at all and that the red discoloration would have disappeared by the time he saw plaintiff. He added that Mrs. Trahan was highly nervous and upset and that he gave her an injection to calm her. He also gave her an analgesic cream and capsules for muscle soreness.
Plaintiff complained of nervousness and pain lasting from the time of the striking through the time of trial. Dr. Dix testified, however, that although plaintiff did have a nervous condition, this antedated the incident in question. He said that he had prescribed drugs for plaintiff’s nerves on occasion before January 17, 1970 and that although plaintiff was using these drugs more regularly after that date, he could not definitely connect the increased use to the incident complained of.
The next time Dr. Dix saw plaintiff was within two weeks of the trial, on January 26, 1971. He did not remember even having spoken to her on the telephone during the intervening year, and stated that plaintiff had simply been refilling her prescription during that time. On that occasion plaintiff complained to the doctor of pain in her breast and soreness of the right arm and shoulder. Dr. Dix stated that he had no reason to believe this was caused by anything but the incident of January 17, 1970 since that was the only history given him by plaintiff. He said, however, that he could not “prove” this to be the cause, and that there were other possibilities, such as myositis or muscle strain.
Mr. Trahan corroborated the testimony of his wife, stating that she had a discolored lump in the affected area for several weeks after the blow and that she has been nervous and unable to sleep normally ever since. He also testified that defendant called him the day following the incident and apologized for striking Mrs. Trahan. Defendant’s version of this telephone call is that he did speak to Mr. Trahan, but he denied having struck the latter’s wife.
Linda Faye Trahan testified that when defendant and Adam Kershaw stood and faced each other she knew there would be trouble and therefore she went to check on her baby, who was in a rear portion of the establishment which constituted plaintiffs’ living quarters. She said that when she returned she found Mrs. Trahan in the kitchen crying. She inquired as to what had happened and Mrs. Trahan told her that defendant had struck her and she demonstrated the afflicted area. She offered to take care of the place while plaintiff went to the doctor and while she was thus engaged, defendant returned and ordered another beer. She served it to him and then, while he was in the restroom, she seized her child and ran across the street to a service station, she being fearful of what defendant might do. She waited there until defendant left, shortly thereafter.
We find the preponderance of the evidence to be in favor of plaintiffs’ claim that Mrs. Trahan was struck, though unintentionally, by defendant. The question of assumption of risk has arisen, but *153 was not pleaded by defendant. This is a special defense which must be specially pleaded, Lea v. Cannon, La.App., 146 So.2d 655, and cases therein cited, and it not having been pleaded, we do not consider it. Accordingly, we opine that the district court committed manifest error in dismissing plaintiffs’ suit and we reverse its judgment so as to now hold for plaintiffs.
With regard to the quantum of damages to be awarded plaintiffs, we note, first of all, that the only medical expense which Dr. Dix could definitely link to the incident was the amount of $9.90 representing the expense incurred by Mrs. Tra-han on the occasion of her visit to the hospital on the night of January 17, 1970. Accordingly this is the total to which Mr. Trahan, as head and master of the community of acquets and gains existing between himself and his wife, is entitled.
We are unimpressed with Mrs. Trahan’s complaints of pain and nervousness for one year following the incident. Her nervous condition, as said above, antedated the incident and her afflictions during that year were obviously not serious enough to compel her to visit a physician. Her failure to consult one leaves the record devoid of any medical evidence to substantiate her complaints save for that of Dr. Dix, set out above. We are convinced that she was struck by defendant’s elbow and that the blow caused her to endure physical and emotional discomfort. She has failed, however, to show that the discomfort was of anything but short duration, and accordingly, we think that an award of $200.00 would do substantial justice between the parties.
For the above and foregoing reasons the judgment of the trial court is reversed and judgment is now rendered in favor of plaintiffs and against defendant, awarding plaintiff Adan P. Trahan the sum of $9.90 and plaintiff Virgie Trahan the sum of $200.00, both with legal interest from date of judicial demand. Costs in both courts are assessed against defendant-appellee.
Reversed and rendered.