McCALEB, Justice.
This is an action in damages arising out of a motor vehicle accident which occurred on the western incline of the Mississippi River bridge at Baton Rouge during the early morning hours of January 30th 1949, when a pick-up truck, owned by Red Stick Tire & Supply Company and driven by its employee, Adam J. Tullier, ran into the rear end of a Louisiana Department of Highways’ truck which was stopped on the south lane of the bridge at a point approxi *999 mately two-thirds upwards of the middle. Plaintiff, a guest passenger in the pick-up truck, sustained painful and permanent injuries in the accident for which he seeks recovery of $33,100.44. The defendants in the case are Red Stick Tire & Supply Company and its liability insurance carrier, State Farm Mutual Automobile Insurance Company, Joseph Silvio, the operator of the Department of Highways’ truck, and Great American Indemnity Company, the insurer of Department of Highways.
In his petition, plaintiff attributes the accident and his ensuing injuries to the combined negligence of Tullier, who he alleges failed to keep a proper lookout and negligently ran into the rear of the highway truck, and Silvio, who, it is averred, was at fault in stopping the truck on the bridge at night without visible tail lights, in failing to place proper flares to the front and rear of the truck and in parking the truck in such a position that sufficient clearance was.not allowed for the safe passage of other traffic.
Red Stick Tire & Supply Company and its insurer contended in their answer that Tullier was not acting within the course and scope of his employment at the time of the accident. They also denied that he was at fault in any respect and, alternatively, pleaded the contributory negligence of plaintiff as a bar to his recovery. The other defendants, Silvio and Great American Indemnity Company, declared that the accident was caused solely through the negligence of the driver of the pick-up truck and averred that neither Silvio[1] nor the Department of Highways was chargeable with fault in the premises. Similarly, they alternatively pleaded contributory negligence on the part of plaintiff.
Following a hearing on these issues, the trial judge concluded from the evidence that the accident was occasioned by the combined and concurring negligence of Tullier and Silvio. Accordingly, he held State Farm Mutual Automobile Insurance Company, Great American Indemnity Company and Silvio liable in solido. The amount of the judgment was $14,100.44. However, the two insurance companies were cast for not more that $10,000, which is their maximum liability under contracts with their respective insureds. The judgment was silent as to the liability of Red Stick Tire & Supply Company, which was tantamount to its dismissal from the proceeding. In truth, no serious controversy existed as to that defendant for, admittedly, Tullier was using the truck for purposes of his own at the time of the accident and therefore the doctrine of respondeat superior was clearly without application. Conversely, the liability of the insurer of Red Stick for Tullier’s negligent operation of the truck is predicated upon an omnibus clause contained in the policy and, although the applicability of this policy provision was at first questioned by the insurer, it has long since been conceded by it that, inasmuch as Tullier had initial permission *1001 to use the truck, he was afforded full protection under the policy as an additional insured, Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744, and the issue has passed out of the case.
All defendants cast in the lower court prosecuted appeals to the Court of Appeal, First Circuit. There, the judgment was reversed, the Court ruling that, irrespective of the primary negligence of the •operators of the trucks involved in the accident, plaintiff was not entitled to recover as he was guilty of contributory negligence having causal connection with his injuries. See 55 So.2d 75. On plaintiff’s ap- ■ plication, we granted certiorari for the purpose of examining the correctness of this' holding.
The salient facts of the case are not in dispute. We find them to be as follows:
On January 29th 1949, Tullier, an appliance serviceman in the employ of Red Stick Tire & Supply Company, was engaged in installing a heating unit for a customer and was using the pick-up truck (later involved in the accident) in connection with his duties. He completed his work at about 8:30 p. m. and went to his home in Baton Rouge where he bathed, changed clothes and had supper. At about 10:30 p. m. he drove the truck to the Oasis Bar, a saloon in Baton Rouge of which plaintiff is part owner, where he remained until closing time at midnight.[1] Fie and plaintiff decided then to visit another saloon, known as the Country Club, which is situated across the river in East Baton Rouge Parish approximately three or four miles away. The pick-up truck was used for the purpose of this trip, Tullier driving it over the bridge and to the desired destination at a speed of between 30 and 35 miles an hour.
Prior to and at the time of the accident, the weather was inclement; it was sleeting intermittently and exceptionally cold. Because of these conditions, the Department of Highways had directed Silvio to spread salt over the paved roadways of the Mississippi River bridge in order to prevent ice and sleet from accumulating thereon. When Tullier and plaintiff drove over the bridge on their journey into West Baton Rouge Parish, the north lane over which they travelled had already been salted by Silvio and his crew. During the salting operations, the Highway Department employees placed warning signs lighted by flares at each end of the bridge. There were two signs at each approach (the east and the west) stating “Men working on the Bridge — Drive Slow” and “Icy Pavement.” On the way over to the Country Club, Tullier observed the signs but did not encoun *1003 ter. the highway truck as it had already completed the salting of that roadway of the bridge. ■
Tullier and plaintiff had been at the Country Club approximately an hour when they decided to return to East Baton Rouge. Meanwhile, sleet had been falling heavily and had covered the windshield of the pick-up truck while it was parked. . Tullier and plaintiff removed the ice from the driver’s side of the windshield and, with his windshield wiper operating, Tullier was able to have good vision of the road ahead. On the return trip, both he and plaintiff, while they were upon the approach of the south lane of the bridge, observed the warning signs that had been placed thereon by Silvio and his crew.[2] Tullier continued on at a speed of 30 to 35 miles an hour and, for some wholly unexplained reason,[3] failed to see the Department of Highways truck, which 'had stopped at a point two-thirds of the distance upward on the western incline of the bridge, until he was about ten feet from it. At that time, it was, of course, too late to avert an accident.
The Court of Appeal took the position that the alleged primary negligence of Tullier and Silvio was unimportant because, in any case, plaintiff was guilty of such imprudent conduct as to preclude his. recovery. It found that plaintiff’s derelictions consisted of riding in the pick-up. truck when his side of the windshield was. so coated with sleet that he could not. see sufficiently well to describe any type-of object; that he permitted Tullier to-drive at a speed of 30 to 35 miles per hour-up- the incline of the bridge without protest, in spite of the warning signs commanding slow driving because men were working on the bridge; that he did not realize, when he should have been aware,, that the traffic lane of the bridge- was obstructed by a truck; that he failed to see that Tullier heeded the signs to' go slow and that, had he done so, the accident would, not have occurred.
We think that the ruling of the Court of Appeal has the effect of burdening the guest passenger in a motor vehicle with a corollary duty of care for the safety *1005 of the operation equal to that imposed upon the driver himself.
Contributory negligence is, as the phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred.[4] Insofar as the rights of a guest in an automobile are concerned, it is settled that, in actions against third persons, the negligence of the host driver does not bar recovery because his negligence cannot be imputed to the guest. Lawrason v. Richard, 172 La. 696, 135 So. 29; Lorance v. Smith, 173 La. 883, 138 So. 871. However, a guest may be denied recovery on the ground of contributory negligence in instances where he is guilty on his own part of independent negligence of such a nature, that, but for which, his injuries would not have been sustained. Lorance v. Smith, supra; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Delaune v. Breaux, 174 La. 43, 139 So. 753; Squyres v. Baldwin, 191 La. 249, 185 So. 14. But in determining whether the asserted fault of a guest has been a contributing factor in bringing about his injuries, it is first necessary to ascertain what duties are imposed upon him as pertain to the operation of the vehicle and the safety of the journey. It is firmly established by the above cited authorities of this Court and others of the Courts of Appeal of this State, too numerous to mention, that a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden.or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by- the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469, “ * * * is not required to monitor the operation or to pay attention to the road and other traffic conditions” in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.
*1007 On the other hand, the jurisprudence has imposed upon the guest an obligation to avoid an accident or injury to himself under certain conditions. That duty has been tersely said by this Court, in Delaune v. Breaux, supra, to exist in cases where the guest “ * * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver -or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver * * 174 La. at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time when the driver is able to avert it, his dereliction may be said to be a contributing cause of any injury he may sustain.
In addition to these instances of contributory negligence, recovery of a guest may be refused when he has knowingly assumed a particular risk, such as riding with an intoxicated driver or one otherwise incompetent. This doctrine of assumption of risk has sometimes been applied indiscriminately by the courts as contributory negligence. James, Assumption of Risk, 61 Yale L.J. 141 (1952). Be this as it may, discussion of the doctrine is unimportant in this case for reasons to which we shall hereinafter advert.
Applying the foregoing rule of law to the facts presented, we experience difficulty in discerning the alleged contributory negligence of plaintiff. The Court of Appeal thought that it was' imprudent for plaintiff to ride in the truck under the weather conditions prevailing on the night in question, with his vision obscured by the-ice upon the windshield on his side of the truck and with the windshield wiper not working. This conclusion necessarily assumes for its premise that, due to the inclement weather, plaintiff was charged with, the obligation of keeping a proper lookout and inflicts on him a penalty for his. reliance upon the skill of Tullier, whose-vision was not appreciably obstructed in anyway according to his own testimony. But,, as we have shown, the law exacts no such duty of a guest, even in inclement weather. Squyres v. Baldwin, supra. Plaintiff was. entitled to place reasonable reliance on the driver to discharge the obligation of' being vigilant for the appearance of sudden or unexpected dangers. Delaune v. Breaux,, supra.
The Court of Appeal also felt that plaintiff was derelict in not cautioning. Tullier in respect of the speed of 30 to 35 miles an hour, which he maintained up the-incline of the bridge, in view of the hazardous driving conditions and the warning-signs relative to the icy pavement and the men working on the bridge. But, here again, the opinion overlooks the fact that Tullier was. fully aware of the danger ahead. Lienee, there was no reason for plaintiff to tell him about it. And, if it be conceded that the 30 to 35 mile per hour-speed of the truck was excessive under the- *1009 prevailing conditions, we do not consider it to be of such a reckless nature as would immediately apprise plaintiff that an accident was imminent and thus place upon him a ■duty to protest the operation.
Moreover, it seems clear that the ■speed of the pick-up truck had nothing whatever to do with the accident. The evidence shows that the truck was in good working order and there was no reason why Tullier could not have brought it to a stop ■short of an accident if he had observed the Highway truck directly in front of him on ■the bridge at the time it came within the range of vision of his headlights. Hence, the fact that he was driving at 30 to 35 miles per hour instead of 20 to 25 miles an hour was not the proximate cause; the accident was due to his failure to see the truck until he was within ten feet of its rear. ■Generously assuming, then, that plaintiff ■should have asked o.r demanded that Tullier retard the speed of the truck, there is nothing to show that his failure in this respect would have averted the mishap.
Respective counsel for all defendants have earnestly contended that Tullier was under the influence of liquor, although they concede that there is no proof that he was intoxicated. While we fail to perceive the difference between intoxication and being under the influence of liquor, we undertake discussion of the matter because the ■Court of Appeal implies in its opinion that it ■entertained doubt as to the veracity of the ■testimony of Tullier and plaintiff that each had consumed not over two bottles of beer during the entire evening. The only other evidence on this subject is that of the members of the Highway Department crew and the state policemen, who arrived at the scene of the accident shortly after its occurrence. Some of these witnesses say that Tullier had the odor of liquor on his breath, but no one was willing to avouch that he was under its influence. On the contrary, Sgt. Green of the State Police stated that, if he had thought that Tullier had been operating the truck under the influence of liquor, he would have noted it in his report of the accident and would have charged him with the offense. Obviously, then, defendants’ charge that plaintiff assumed the risk by entrusting his safety to a driver under the influence of alcohol is not meritorious..
Being of the opinion that defendants have not established their special plea that plaintiff was contributo rily negligent, there remains only for decision the questions respecting defendants’ liability, that is, whether the accident was caused solely by the negligence of Tullier, or that of Silvio, or by the concurring fault of both of them, and also the quantum of plaintiff’s damages. Since the Court of Appeal has not considered those issues, which primarily fall within its appellate jurisdiction, it is proper, even though not essential, that the case be remanded to that Court for their disposition. Mataya v. Delta Life Ins. Co., 222 La. 509, 62 So.2d 817.
*1011 The judgment of the Court of Appeal is accordingly reversed and the case is remanded to that Court for further proceedings. consistent with the views herein expressed. The costs of this writ of review are to be paid by the defendants; taxation of all other costs is deferred until final determination of the case by the Court of Appeal.

. Tullier says he drank only one bottle of . beer at Oasis Bar and not more than two bottles during the entire evening. He swore that he drinks nothing stronger than beer and that, due to the freezing weather on the night of the accident, he did not desire to drink many cold beverages.

. However, plaintiff’s vision was much obscured by the accumulation of ice on his side of the windshield which had not been entirely removed because the mechanical wiper on that side of the windshield was out of order.

. We say this because the evidence shows that, save for the defective windshield wiper on plaintiff’s side, the truck was in mechanical good order and its headlights were illuminating properly. In addition, the roadways of the bridge were lighted and a member of Silvio’s crew was sta.tioned fifty feet in the rear of the Highway truck, flagging traffic' to the left with a -flashlight and handkerchief. Hence, but for the falling sleet, there was nothing to interfere, with the driver’s vision and he says in his testimony “Under those general conditions it was as good as it was on a sunny day”.

. Blashfield, in Ms Cyclopedia of Automobile Law and Practice, Perm. Ed. Yol. 4, Ch. 71, Section 2553, declares: “ * * * contributory negligence' is a part of the doctrine of proximate cause, that is, to bar a recovery for an injury it must be the proximate cause thereof, and, before an illegal act or omission can be held to be contributory negligence, it must appear that there was a causal connection between such act or omission and the injury complained of. The mere coilateral wrongdoing of the injured person cannot of itself defeat a right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence ddi not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar a recovery.”