215 So.2d 226 (1968)
Asa J. LANDRY, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellees.
No. 2436.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1968.
*227 Francis E. Mire, Lake Charles, for plaintiff-appellant.
Stockwell, St. Dizier, Sievert & Viccellio, by, Fred H. Sievert, Jr., Lake Charles, for defendants-appellees-appellants.
Camp, Carmouche, Palmer, Carwile & Barsh, by, Harry E. Barsh, Jr., Lake Charles, for defendants-appellees.
Before TATE, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Asa J. Landry, individually and in behalf of his minor son, Kenneth Landry, claims damages for personal injuries sustained by the son as the result of a two-car motor vehicle collision. One of the automobiles involved in the collision was being driven by Adam Cormier, Jr., and the other was being driven by Curtis Joseph Mott. Both of these drivers were minors when the accident occurred. The suit was instituted against Adam Cormier, Sr. (the father of one of the drivers), Joseph C. Mott (the father of the other), and against their respective liability insurers.
Judgment was rendered by the trial court in favor of plaintiff and against Cormier and his insurer, State Farm Mutual Automobile Insurance Company. Plaintiff's demands against Mott and his insurer, Allstate Insurance Company, were rejected. Appeals were taken by plaintiff and by defendant Cormier and his insurer.
The accident occurred about 6:35 p. m. on December 21, 1966, at the intersection of U.S. Highway 90 and Murray Street, near the City of Lake Charles. Highway 90 at that point is a straight, two-lane, concrete thoroughfare, which runs east and west. Murray Street is a two-lane, black-topped, *228 residential street, which runs northwest and southeast, and it intersects or dead ends into the south side of Highway 90, forming a "T" intersection. Highway 90 is the favored street, and the posted speed limit for vehicles on that highway is 60 miles per hour. A stop sign is located at the intersection warning motorists on Murray Street to stop before proceeding to enter the highway. A service station is located on the north side of Highway 90, across the highway from the point where Murray Street intersects it.
It was dark when the accident occurred, but the weather was clear and visibility was good. The headlights on both automobiles were burning before and at the time the vehicles collided.
Immediately before the collision occurred the Cormier automobile was being driven in a northwesterly direction on Murray Street. Young Landry was riding as a passenger in that car, being seated on the front seat to the right of the driver. Cormier brought his car to a complete stop a few feet before he entered the intersection, and he remained stopped in that position long enough to allow some cars and a truck on Highway 90 to traverse the intersection. He then caused his automobile to move forward onto the highway. While the Cormier car was in the intersection, the right side of it was struck by the left front part of the Mott automobile which was being driven in a westerly direction on Highway 90. The Mott vehicle was traveling at a speed of about 60 miles per hour as it approached the intersection.
The trial judge concluded that the driver of the Cormier automobile was negligent in failing to accord the right of way to Mott, and that his negligence in that respect was a proximate cause of the accident. On this appeal Cormier and his insurer contend, among other arguments, that the trial judge erred in reaching that conclusion.
The stop sign at this intersection was located 39 feet south of the south edge of the concrete slab on Highway 90. The slab is 24 feet wide. When a motorist traveling northwest on Murray Street reaches a point even with or near this stop sign he has an unobstructed view of westbound vehicles on the highway as they approach the intersection. A westbound motorist on the highway also has an unobstructed view of a vehicle on Murray Street as it approaches the intersection. The street, however, does not enter the highway at a 90 degree angle. The headlights of an automobile on Murray Street face northwest as the car approaches the junction. A westbound night motorist on Highway 90, therefore, obviously experiences some difficulty in seeing an automobile approaching the intersection from Murray Street, since the headlights of the approaching car are directed away from the driver on the highway.
Adam Cormier, Jr., who was 18 years of age when the accident occurred, testified that when he stopped prior to entering the intersection the stop sign was about "middle ways" of his car, that he looked both ways and didn't see any vehicles approaching on the highway, and that he then pulled into the highway at a "normal speed." He stated that he intended to turn to his left at this junction and to proceed westward on Highway 90, but that the collision occurred when the front part of his car reached the westbound traffic lane of that highway. He did not see the Mott vehicle before the accident occurred.
Plaintiff's son, Kenneth Landry, testified that Cormier stopped "a little behind the stop sign" and allowed at least two cars and one truck to go through the intersection before he proceeded to enter Highway 90. He was under the impression that Cormier intended to drive across the highway and into the service station on the north side of it, in order that they could visit with a friend who was at the station. Landry said he looked to his right and saw no vehicles approaching on *229 the highway until "just a split second" before the collision occurred. He stated that immediately before Cormier started across the highway a truck went through the intersection, traveling east, and that it is possible that this truck obscured his and Cormier's view of the approaching Mott automobile at the time they proceeded into the highway.
Curtis Joseph Mott testified that he first saw the Cormier vehicle when it pulled out in front of his car. He estimated that Cormier was about 30 feet ahead of him at that time, and he stated that he immediately applied the brakes but was unable to avoid a collision.
The evidence shows that the collision occurred in the north, or westbound, lane of traffic on Highway 90. The right front door post of the Cormier car was struck by the left front part of the Mott vehicle. The Mott automobile skidded a distance of 20 feet before the vehicles collided. Plaintiff's son and the drivers of both vehicles were familiar with this road junction. The evidence shows that Cormier was driving at a normal rate of speed, from five to ten miles per hour, as he entered the intersection.
When a motorist is confronted with a stop sign legally located at an intersection, it is his duty to bring his vehicle to a complete stop, to appraise traffic in the intersecting street, and to make certain that the way is clear for him to make a safe passage across the intersection before he enters it. When a motorist stops his vehicle before entering a right of way street, he has performed only half of the duty which the law has imposed upon him. To stop and then proceed into the crossing, in the immediate path of oncoming vehicles, constitutes negligence. Messana v. Allstate Insurance Company, 182 So.2d 93 (La.App. 4th Cir. 1966); Mahaffey v. State Farm Mutual Automobile Insurance Company, 175 So.2d 905 (La.App. 3d Cir. 1965); Hebert v. Travelers Insurance Company, 179 So.2d 513 (La.App. 3d Cir. 1965).
The driver of a motor vehicle is charged with a duty of maintaining a proper lookout, and he is held to have seen that which he should have seen by the exercise of due diligence. Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962).
The evidence in the instant suit shows that the driver of the Cormier vehicle was negligent in failing to appraise traffic on Highway 90, and in failing to ascertain that the way was clear for him to make a safe crossing, before he entered the intersection in the path of the oncoming Mott vehicle. We thus agree with the trial judge that young Cormier was negligent, and that his negligence was a proximate cause of the accident.
The appellants contend that the trial judge erred in holding that the driver of the Mott vehicle was free from negligence. They argue that young Mott was negligent in driving at an excessive rate of speed and in failing to maintain a proper lookout.
As we have already noted, the Mott vehicle was being driven at a speed of about 60 miles per hour as it approached the intersection. That was within the posted speed limit for Highway 90 at that intersection, and despite arguments of appellants to the contrary we do not consider this speed to be unreasonable or dangerous. Young Mott saw the Cormier vehicle when it was about 30 feet in front of him. He applied his brakes immediately and left skid marks about 20 feet long extending up to the point of impact.
At an intersection controlled by a stop sign, a motorist on the favored street has the right to assume that a driver entering the intersection from the inferior street will observe the law and will yield the right of way before proceeding into the intersection. The favored motorist may indulge in this assumption until such time as he sees, or should see, that the *230 motorist on the inferior street is not going to obey the law. If the motorist on the favored street sees, or should see, that the driver of the other vehicle is not going to yield the right of way, and thereafter he has a reasonable opportunity to avoid the accident by taking evasive action, then a duty rests on him to attempt to take that evasive action and ordinarily he will be held to be negligent if he fails to do so. Sims v. Miller, 193 So.2d 890 (La.App. 3d Cir. 1967); Mahaffey v. State Farm, supra; Doucette v. Primeaux, 180 So.2d 866 (La.App. 3d Cir. 1965, writ refused); Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960).
In the instant suit young Mott had the right to assume that a motorist on Murray Street would obey the law and would not enter the intersection until it was safe to do so. Since the headlights of the Cormier car were directed in a northwesterly direction, away from Mott, we agree that it was more difficult for Mott to see that vehicle as it started across the highway than it would have been had Cormier been approaching at right angles to the highway.
We also feel that when Cormier started to enter the intersection his view of the Mott car, and Mott's view of his automobile, were temporarily obstructed by the eastbound truck which had traversed the intersection just before Cormier entered it. We think the presence of this truck explains why neither Cormier nor Kenneth Landry saw the headlights of the Mott car when they looked to their right, although the Mott headlights were facing almost directly toward them. These are factors which we think must be considered in determining whether Mott was negligent.
Cormier was negligent in starting to enter intersection when his view was obstructed by the passing truck, because he was on an inferior street and a duty rested on him to determine that the way was clear before he proceeded to cross. Mott, on the other hand, was on the favored street. He was entitled to assume that motorists on the inferior street would yield the right of way to him, and he could rely on that assumption until something occurred which reasonably should have caused him to realize that the inferior driver would not obey the law.
The appellants have computed the number of feet per second which each of the automobiles were traveling immediately before the collision occurred. They argue that according to these computations, and considering the distance each traveled after Cormier had stopped at the stop sign, Mott would have had time to take some evasive action to avoid the accident if he had been maintaining a proper lookout. We have considered these arguments and these computations carefully, but we do not find them sufficient to show negligence on the part of Mott.
Assuming that Cormier was driving at the speed which the appellants contend he was driving, Mott would have had no reason to suspect that Cormier did not intend to yield the right of way until the Cormier car reached a point very near the paved portion of the highway. The highway was only 24 feet wide, and Cormier had not completely crossed it by the time he was struck. It is argued that Cormier was crossing the highway at an angle, so that he traveled about 30 feet on the pavement before his car was struck. We do not think the evidence establishes that, but even if it does it is apparent that Cormier traveled not more than two car lengths between the time danger should have become apparent to Mott and the time of the accident. Considering the speed at which Mott was traveling, we do not think he reasonably could have stopped between the time he saw (or should have seen, Cormier enter the highway and the time of the accident.
In our opinion the evidence does not support the argument of appellants that Mott should have observed that Cormier was going to enter the intersection, in violation *231 of Mott's right of way, in time to enable Mott to take evasive action. We thus concur in the conclusion reached by the trial judge that Mott was free from negligence.
Defendants contend that plaintiff's son, Kenneth Landry, was negligent, and that his negligence was a contributing and proximate cause of the accident barring plaintiff from recovering.
Plaintiff's son was sitting on the front seat of the Cormier vehicle, and as we have already noted, he testified that he looked to his right as they approached the intersection and he did not see the Mott vehicle approaching. Defendant argues that young Landry was negligent in failing to see the headlights of the approaching Mott vehicle and in failing to warn the driver, Cormier, of the danger. Such a warning, it is argued, would have avoided the accident.
The applicable rule was stated by our Supreme Court in Herget v. Saucier, 223 La. 938, 67 So.2d 543 (1953), as follows:
"Generally, a guest passenger is not required to keep a constant lookout for the dangers of the highway, or to pay attention to the ordinary road and other traffic conditions incident to automobile driving, it being his right and privilege to place reasonable reliance upon the driver in charge of the car for the exercise of the necessary care and caution. Of course, if he is aware of a danger ahead which apparently is unknown to the driver, or if he observes that such driver is incompetent or otherwise unfit to operate the machine, a duty devolves upon him to take some precautionary action. White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245, [42 A.L.R.2d 338] (and authorities cited in both majority and dissenting opinions thereof)."
Our brothers of the First Circuit Court of Appeal, after thoroughly reviewing the jurisprudence on this question, concluded in Rodriguez v. State Farm Mutual Insurance Company, 88 So.2d 432 (La.App. 1st Cir. 1955, cert. denied), that:
"In summarizing the above jurisprudence, we find that a guest has an obligation to avoid an accident when he is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver. Of course, this general rule depends on the facts and circumstances of each particular case, and the facts and circumstances must be weighed in each individual case to determine whether the guest was guilty of independent or contributory negligence."
The record in the present suit indicates that young Cormier was familiar with this particular intersection. There is nothing in the evidence which we think should have indicated to Kenneth Landry that the driver was incompetent or was not aware of any danger ahead. We agree with the trial judge, therefore, that plaintiff's son was not negligent in failing to observe the approaching Mott vehicle and in failing to warn young Cormier of the danger. See McMorris v. Hanover Insurance Company, 175 So.2d 697 (La.App. 1st Cir. 1965); DeGregory v. State, Department of Highways, 192 So.2d 834 (La.App. 1st Cir. 1966); White v. State Farm Mutual Automobile Insurance Company, 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338 (1953); Normand v. American Home Assurance Company, 171 So.2d 504 (La.App. 3d Cir. 1965, writ refused).
Judgment was rendered by the trial court on December 14, 1967. Plaintiff was awarded $2704.72 individually, and $15,000.00 for the use and benefit of his minor son. The liability of State Farm Mutual Automobile Insurance Company, however, was limited to $5,000.00, plus legal interest, since that was the extent of its insurance coverage.
*232 Within four or five weeks after that judgment was rendered, State Farm paid all of the costs which had been incurred in the suit and it deposited in the Registry of the Court the total amount of principal and interest then due by it on the judgment. State Farm then caused a rule to issue directing all other parties to show cause why the sum deposited should not be decreed to be a complete satisfaction of the judgment against it, and why the judgment should not be cancelled insofar as it relates to State Farm. On February 6, 1968, which was shortly after the above mentioned rule had been issued, Cormier and State Farm moved for and were granted a devolutive appeal from the judgment which had been rendered on the merits. An adequate appeal bond was filed by these parties on February 13, 1968.
Three or four months later a hearing on the rule was held, and judgment was rendered by the trial court on June 7, 1968, making the rule absolute, ordering the cancellation of the judgment insofar as it relates to State Farm, and decreeing that "the foregoing is without prejudice to the rights of appeal of any party." Plaintiff has appealed separately from this last mentioned judgment.
Plaintiff contends that the trial court was divested of jurisdiction in this case when the appeal bond was filed by State Farm, that the court thus was without authority to order the earlier judgment cancelled as to State Farm, and that plaintiff is entitled to have the last judgment of the trial court ordering the cancellation set aside. Plaintiff also contends that State Farm cannot appeal since it has paid the full amount due under the judgment appealed from and has obtained a release from it.
The pertinent portions of LSA-C.C.P. art. 2088 provide:
"The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the timely filing of the appeal bond, or if no bond is required, on the granting of the order of appeal. Thereafter, the trial court has no jurisdiction over these matters except to:" * * *
"(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal. As amended Acts 1964, No. 4, § 1."
In the instant suit State Farm appealed devolutively, so the execution of the judgment was not suspended. The trial court thus retained authority to "execute and give effect to the judgment." While the appeal was pending, the trial court could have enforced payment of the judgment by means of a writ of fieri facias, and if payment in full had been enforced by that means the trial court unquestionably would have had the power to order the cancellation of the judgment. We believe the power to "execute and give effect to" the judgment pending a devolutive appeal includes the authority to accept and receive payment in full for the benefit of the judgment creditor, even though such payment was not enforced by a seizure and sale, and this includes the power to direct the cancellation of the judgment when the payment is made.
The fact that State Farm has paid the judgment does not deprive it of its right to appeal. We have already observed that payment of the judgment could be enforced by the judgment creditor while the devolutive appeal is pending. We think the judgment debtor also has the right to voluntarily pay the full amount due by him under the judgment, and thus stop the running of interest, without adversely affecting his right of appeal. The payment by State Farm of its entire obligation under the judgment, including costs and interest, and the obtaining of a cancellation of the judgment insofar as it relates to State Farm, cannot adversely affect the other parties, particularly since *233 the decree specifically sets out that it does not prejudice the rights of appeal of any party.
The case of Fruge v. Hub City Iron Works, Inc., 131 So.2d 593 (La.App. 3d Cir. 1961) is not applicable here. In that workmen's compensation case the defendant made a compromise offer, less than the amount claimed, with a condition that a full release of all claims be granted if the offer should be accepted. We held that did not constitute a tender. In the instant suit the full amount due, including interest and costs, was paid. Under those circumstances the judgment debtor is entitled to a cancellation of the judgment against it, whether the cancellation is ordered in this suit or in a separate proceeding.
We find no error in the judgment of the trial court rendered on June 7, 1968, which decreed that the sum deposited satisfied State Farm's liability under that judgment, and ordering that the judgment be cancelled as to State Farm.
Finally, plaintiff contends that the amount of the award should be increased to include loss of wages. Defendants Cormier and State Farm, on the other hand, contend that the award should be reduced, not because of the nature and extent of the boy's injuries, but because of the inability of Cormier to pay that part of the award which is in excess of the insurance coverage. The trial judge considered these arguments and the evidence as to Cormier's financial condition in determining the amount which should be awarded. We think the amount of the judgment is fair, and we thus will not disturb the award which was made by the trial judge.
For the reasons herein set out, the judgment appealed from is affirmed. One-half the costs of this appeal are assessed to plaintiff, and the remaining one-half of such costs are assessed to defendants-appellants, Adam Cormier, Sr., and State Farm Mutual Automobile Insurance Company.
Affirmed.