On August 24th, 1935, at about noon, Webster J. Arceneaux was seriously injured when his Ford V-8 automobile overturned on what is known as the Air Line Highway near St. Rose in this state.
Believing that the Department of Highways of the State of Louisiana, which at that time was known as Louisiana Highway Commission, was at fault in permitting a large hole to remain in the surface of the highway, and that his automobile had turned over because it struck this hole, and believing, too, that the driver of his car was not negligent in failing to see the hole as the car approached it, Arceneaux appealed to the State Legislature for permission to seek recovery in tort from the said Department of Highways. In 1940, his request was granted by Act 359 of 1940, and, acting under the permission granted him by that Act, on September 27th, 1940 he filed his petition for recovery for his said injuries.
To this petition, the Department of Highways filed an exception of no cause of action. This exception was maintained in the District Court and the suit was ordered dismissed. On appeal we reversed that judgment and remanded the matter for further proceedings. See Arceneaux v. Louisiana Highway Commission,5 So.2d 20. Defendant then answered the petition and the supplemental petition. After a trial on the merits, judgment was rendered in favor of plaintiff for $20,000, with legal interest from judicial demand and for costs.
From that judgment defendant again appealed to this court.
When the matter came before us it was shown that there was in the record certain evidence which had been taken by deposition under Article 439 of our Code of Practice, and it appeared that the various written questions had not been propounded to the respective witnesses until after the expiration of the period within which the order authorizing the taking of the testimony required that it be returned into court. We found that the jurisprudence of this State had clearly established the rule that such testimony, taken too late, is inadmissible and, consequently, we held that that evidence should not have been considered in the court below, and could not be considered by us. The witnesses whose testimony was thus excluded were Isaac (Montana) Smith, the negro chauffeur who had been operating plaintiff's car at the time, and all but one of the various doctors who had treated plaintiff. We felt that without the evidence of those witnesses we could not properly determine whether there should be a recovery nor how much should be awarded. We again remanded the matter to afford a further opportunity for the securing of the testimony of those witnesses. See Arceneaux v. Louisiana Highway Commission, 12 So.2d 733.
The case was again tried in the District Court and the testimony of those witnesses was taken, and again there was judgment for plaintiff for $20,000, with legal interest from judicial demand and for costs.
This is an appeal from that judgment.
The plaintiff contends that the hole in the highway had been expressly called to the attention of officials of the State Department of Highways, and that, therefore, that Department had actual knowledge of its existence, and consequently was negligent in permitting it to remain. Plaintiff further contends that even if the proper officials of the Department of Highways did not have actual knowledge, nevertheless constructive knowledge should be imputed to them because, so plaintiff charges, the hole had been in the highway for many weeks; for so long a time as to warrant the presumption that the said Department had knowledge of its existence.
Defendant, on the other hand, maintains that the hole had not been in the highway for such time as to justify it being charged with constructive knowledge of its existence; that it did not have actual knowledge thereof and therefore should not be liable in any event, and it further maintains that even if it could be said that the said Department was at fault in permitting the hole to remain in the highway, nevertheless, there should be no recovery because the hole was open and apparent, could easily have been seen and should have been seen by plaintiff's driver, and that therefore if plaintiff's driver drove the said automobile into the hole, the accident resulted from his contributory negligence.
Defendant further maintains that in any event the amount awarded below is excessive and should be reduced and, further, that in no event can the State or the Department of Highways be held liable for interest or for court costs. *Page 640 
The plaintiff was a travelling salesman. He owned a Ford V-8 automobile, which ordinarily, he himself, operated. On the night before the day on which the accident occurred, he had not retired until about 3 o'clock in the morning and, consequently, on arising he felt that he might be too drowsy to safely drive his own car to New Orleans. He therefore engaged a negro, Isaac (Montana) Smith, who had not worked for him before, to drive him to New Orleans. They left Baton Rouge at about 8:45 in the morning. Arceneaux sat on the front seat alongside Smith.
Smith says that "It was a nice day; a beautiful day" and he says that the accident happened "around noon."
At that time the highway bridge across the "spillway" had not been completed, and between LaPlace and the lower side of the spillway vehicles still made use of what was known as the old river road. At some point near St. Rose on this old road Arceneaux's car turned over and he was seriously injured.
If "Montana" Smith was negligent to such an extent and in such a way as would justify the conclusion that without his fault the accident would not have occurred, however great may have been the negligence of the Department of Highways in permitting the hole to remain in the road, then there can be no recovery. And since we have been impressed by the obvious failure of Smith to explain why he did not see and avoid the hole, we have concluded to first investigate the question of whether he was or was not guilty of contributory negligence. The road was surfaced with what is known as "black top," which we are told is a black asphalt which is spread over rolled gravel or clam shells. Smith said that the hole was about 18" wide and about 14" deep and that it was located a little to the right of the center line. He also said: "I didn't see any holes other but the one I hit", although in another part of his testimony concerning the road he said: "It had holes about in spots. It was not considerable rough." He stated that the speed of the automobile was about 35 miles per hour and he sought to explain his failure to see the hole by using the most unusual word — "unseeable". He repeated this word many times but gave no reason for his failure to see it except to say, "It was unseeable to me." He did make a further effort to explain his failure to see the hole by claiming that he found it necessary to keep his eyes focused at some distance ahead and not on the surface of the road, and that he did this because of traffic and curves in the road, but he admitted that there was "just a slight curve" ahead of him and he admitted, too, that no vehicles were in sight at the time.
Smith's testimony shows that after the accident he walked back from the overturned car to look at the hole, and when asked whether at that time the hole was "unseeable" his answer was "Oh, no". He did not remember whether the inside of the hole was black, saying simply that "it was a regular hole, open at the top."
Arceneaux's testimony is of no assistance whatever since he was asleep at the time and knew nothing about the condition of the road.
One of the plaintiff's witnesses, Crespo, when asked whether there was a hole there, answered: "Big hole, yes", and later, when asked how he knew there was a hole there, answered: "Well, it is plain daylight; anybody could see it." He stated that on another occasion, he, himself, had not noticed the hole and had broken a spring when his automobile went into it, but he explained this by saying that at that time it was raining and the hole was full of water.
Portera, another witness for plaintiff, says that the hole was about 18" long and a little bit narrower and that shells were coming out of it all the time. He says that for this reason "it wouldn't attract no attention." We are not at all sure that the fact that white shells were in the hole and "were coming out of it all the time" would not make it more noticeable, for the surface of the road was black or dark grey and the shells are almost white.
The record creates in our minds a conviction that the hole was unseeable to Smith only because he did not see it and that he did not see it because he was paying no attention whatever to the road ahead. We cannot accept his contention that he could not look at the surface of the road because he found it necessary to focus his eyes higher in order to look out for cars and other traffic. An automobile driver can easily keep his eyes so focused as to be able to tell whether the road is safe and, at the same time, be on the look *Page 641 
out for other traffic or curves in the road. As a matter of fact, even if it becomes necessary for a driver to carefully look at the surface of the road, the shifting of his eyes from that elevation to an elevation a few feet higher requires an infinitesimal fraction of a second and any careful driver can easily do this and make certain that the roadway is safe and also that he is not endangering other vehicles.
It may be, of course, that because of darkness or for some other unusual reason, a depression in a road, or even a hole, may not be noticeable, but always where it has been held that the failure of the driver to see such a depression or to see such a hole has been understandable and has been held not to constitute negligence, there have been unusual facts or circumstances none of which appear here.
In German v. City of New Orleans, La.App., 3 So.2d 181, 182, an automobile owner drove his car into an open canal which crossed the end of a city street at a right angle: "There was no street light by which he might see the canal and there was no barrier which would indicate to him that there was any such dangerous canal in his pathway." We found that the street on which he was driving was "almost flush with the upper edge of the canal." Surely such circumstances are not to be compared to those found here.
Likewise in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 994, L.R.A.1917F, 253, the surrounding circumstances were such as to amply warrant the conclusion that the driver of the automobile was not at fault in not seeing that there was an open canal which crossed the line of his path. There, too, the accident occurred at night. The street was constructed in a most peculiar way so that, in order to cross a bridge over a canal, vehicles were required to turn from the direct line in which they were travelling, and if they did not do so, found themselves confronted by an open canal which crossed in front of them. The Supreme Court said: "There were no guard rails or barriers on the banks of the canal opposite the ends of the driveway * * * nor was there a red light or other warning of danger there."
We agree with counsel for plaintiff in their contention that there is a distinction between running into an object which projects above the surface of the highway and running into a hole or depression below the surface, but we think that the principle that there is such a distinction is more readily applicable where the accident occurs at night than where it occurs in the daytime.
On behalf of plaintiff it is argued that there must have been something unusual about the hole or the surface of the roadway which made it difficult to see because it is shown that other accidents had occurred at that point. For instance, as we have already stated, it is shown that Crespo drove his car into the hole and broke a spring. However, he stated: "It rained a whole lot and I hit that rut and didn't notice it right away", and, he added: "It was full of water."
Hebert, another witness for plaintiff, testified that a few weeks before the accident a Mr. Barquer "bust a tire in that same hole and broke a spring on his truck." But we are not given any of the facts surrounding these two accidents to Barquer, and for all we know they may have been due entirely to his own negligence.
At any rate, we find ourselves unable to believe that Smith could not have avoided the hole by the exercise of ordinary care had he been paying the slightest attention to the roadway ahead. He should have noticed the hole and should have avoided it.
Our conclusion is that the accident was caused by the fault of Smith and that, since he was in the employ of plaintiff and was driving plaintiff's car within the scope of that employment, there can be no recovery by plaintiff.
The judgment appealed from is reversed and plaintiff's suit is dismissed at his cost.
Reversed.
WESTERFIELD, J., takes no part. *Page 642