273 So.2d 680 (1973)
Alvin G. WILLIAMS et al., Plaintiffs-Appellants,
v.
STATE FARM INSURANCE COMPANY, Defendant-Appellee.
No. 9086.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Jos. B. Dupont, Dupont & Dupont, Plaquemine, for plaintiffs-appellants.
Anthony J. Clesi, Jr., Baton Rouge, for defendant-appellee.
Before SARTAIN, BLANCHE and EVERETT, JJ.
SARTAIN, Judge.
The accident giving rise to this litigation occurred on the afternoon of April 22, 1970, in the City of Plaquemine, Parish of Iberville, on Louisiana Highway 1.
Plaintiffs, Alvin G. Williams and Amanda Williams, are the owners of a 1961 Chevrolet automobile, which at the time of the accident was being driven by Irene W. Taylor. Mrs. Williams was riding as a guest passenger in her own vehicle. She seeks recovery for personal injuries and *681 Mr. Williams seeks to recover for expenses incurred on behalf of the community. Inasmuch as Mrs. Taylor was driving the Williams' vehicle at Mrs. Williams' request, Mrs. Taylor is an additional insured under the omnibus clause of plaintiffs' liability policy with the defendant.
The trial judge correctly concluded that the accident was due to the negligence of Mrs. Taylor. However, he denied plaintiffs' recovery on the grounds that Mrs. Williams and Mrs. Taylor were engaged upon a "joint venture" at the time, thus barring recovery. It is with this latter conclusion that we must disagree and hold that the trial judge erred as a matter of law. We reverse.
On the day in question, Mrs. Williams had lost her driver's license. She requested that Mrs. Taylor drive her to Plaquemine for the purpose of shopping for groceries. Mrs. Taylor agreed because she needed to shop also. They had concluded their shopping and were returning to their respective homes when the accident took place. As they were proceeding north on Highway 1 they collided with a 1966 Oldsmobile automobile owned by Milton Godfrey, which was also proceeding in a northerly direction on Highway 1. Plaintiffs allege that Mrs. Taylor was negligent in failing to observe that the Godfrey vehicle had stopped in their lane of travel and the latter was unable to stop and struck the rear of the Godfrey vehicle.
In the instant case the record is quite clear that Mrs. Taylor did not have her vehicle under control and did not observe the preceding motorist and thus avoid this rear-end collision. Neither Mrs. Williams nor Mrs. Taylor observed the presence of the Godfrey vehicle until it was necessary for Mrs. Taylor to abruptly apply her brakes, at which time Mrs. Williams grabbed the steering wheel in an effort to "help" and avoid the accident. The record does not support the conclusion that the Godfrey automobile made a sudden or abrupt stop thereby creating a sudden emergency as urged by the defendant. As a matter of fact, the Godfrey vehicle was already stopped when it was first observed by Mrs. Williams and Mrs. Taylor.
With respect to the question of liability, the law is to the effect that a following motorist is presumed to be negligent when he strikes a preceding motorist from the rear and the burden rests with the following motorist to exonerate himself of negligence. Barnes v. Toye Bros. Yellow Cab Company, 204 So.2d 83 (4 La. App., 1967); R.S. 32:81.
We do not consider that in resolving the issue before us we have to determine whether or not Mrs. Williams and Mrs. Taylor were in fact engaged upon a joint venture. Assuming, arguendo, that they were plaintiffs are nevertheless entitled to recover against the defendant, their own insurer, unless Mrs. Williams, passenger-owner, is independently guilty of negligence contributing to the accident. Absent some unusual circumstance or particular facts which would require that the owner-passenger be more alert than any ordinary passenger, Mrs. Williams had the right to assume that Mrs. Taylor would exercise reasonable care in the operation of the former's vehicle. While it is true that an owner-passenger may owe a greater duty than a guest-passenger, the facts revealed in this record do not indicate that such was required. The theoretical right of control vested in an owner-passenger is, under ordinary conditions, not sufficient to impute negligence of the driver to the owner. Gaspard v. LeMaire et al., 245 La. 239, 158 So.2d 149 (1963).
In the case of Rodriguez v. State Farm Mutual Insurance Company, La.App., 88 So.2d 432, this court extensively reviewed the law relative to the legal relationship between and the liability flowing from an action brought by an owner-passenger against its own insurer for the negligent operation of a guest driver, who is covered under the omnibus clause of the *682 owner's liability insurance policy. In essence, we stated in Rodriguez that it is only when the rights of third parties are involved that an agency relationship will result in the negligence of a driver being imputed to an owner-passenger. Thus, a principal who is free from fault, i.e., independent acts of negligence, may sue his agent for injuries sustained by him through the fault of the agent. The same is true with respect to persons engaged upon a joint venture where the rights of third parties are not involved.
In Lawrason v. Richard, 172 La. 696, 135 So. 29, 31 (1931), the court stated:
"Moreover, the doctrine of joint liability because of joint adventure has no application between the parties but only as concerns third parties, the theory of joint liability being based on supposed agency. And there can be no doubt that a negligent agent is liable to his principal unless the latter be also at fault." (citations omitted)
See also Normand v. American Home Assurance Company, 171 So.2d 804 (3rd La. App., 1965), rehearing denied March, 1965, writ refused April, 1965.
We now turn to the question of damages. It was stipulated that Mrs. Williams incurred medical expenses in the following amounts: Rhodes J. Spedale General Hospital, $254.20; Baton Rouge General Hospital, $35.00; Dr. Rhodes J. Spedale, $120.00; for a total of $409.20. With respect to Mrs. Williams' injuries she testified that she was rendered unconscious by the impact and recalled nothing following the accident until she came to the next day in the hospital. However, the testimony in this regard is in conflict as one of the investigating officers testified that though she was hysterical at the scene of the accident she was not unconscious.
Mrs. Williams was taken to the hospital in an ambulance and remained there until the following afternoon when she was discharged. She was initially treated in the Emergency Room by Dr. Spedale who diagnosed her injuries as a concussion and lacerations of the forehead which required some twenty stitches. He discharged her from the hospital on the following day but continued to see her until January 18, 1971. He testified that from the date of the accident until the date of discharge he saw her on ten different occasions.
Mrs. Williams testified that following the accident she suffered severe headaches and recurring blackouts. Dr. Spedale deposed that these headaches and blackouts were the result of the accident but such symptoms should disappear in two months.
The plaintiff was also seen by Dr. Thomas B. Flynn, a specialist in neurological surgery. Dr. Flynn deposed that a neurological examination performed by him on July 7, 1971, was negative. Based on plaintiff's history of the accident, he concluded that she sustained a mild concussion and multiple lacerations of the forehead. This expert is implicit in his testimony to the effect that plaintiff's continued complaints of fainting, dizziness and headaches up to the date of his examination of her were not related to the injuries she sustained in the accident. He did confirm Dr. Spedale's opinion that a mild concussion would produce headaches and moments of dizziness for a period of two months from the date of the original trauma.
The laceration was described as commencing just above the left eyebrow and continuing towards the base of the hairline, or as described by Dr. Flynn, five centimeters in length (approximately two inches).
Dr. Spedale did not see or treat plaintiff after January 18, 1971. At the time she was examined by Dr. Flynn on July 7, 1971, she had, according to Dr. Flynn, completely recovered from her injuries.
We think an award of $2500.00 to Mrs. Williams for her personal injuries, including the scar, is justified.
*683 Expert witness fees for Drs. Rhodes J. Spedale and Thomas B. Flynn are fixed at $100.00 each and taxed as costs.
Accordingly, for the above reasons the judgment of the District Court in favor of the defendant and against the plaintiffs is reversed and judgment is rendered herein in favor of Alvin G. Williams and against State Farm Mutual Automobile Insurance Company[1] in the amount of $409.20; and in favor of Amanda Williams and against State Farm Mutual Automobile Insurance Company in the amount of $2500.00, both together with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings.
Reversed and rendered.
NOTES
[1] Erroneously entitled State Farm Insurance Company.