SARTAIN, Judge.
Plaintiff Louis Edwards brought this action against his automobile insurer, Government Employees Insurance Company, for injuries to his right arm sustained when his wife, while driving his car, ran over an exhaust pipe lying in the road. The trial court found that the injuries sustained by plaintiff were caused by the negligence of his wife, Evelyn Edwards, an omnibus insured under plaintiffs policy. Judgment was therefore given in his favor. We affirm as to liability.
On September 11, 1972, plaintiff was riding in the passenger seat of his family car which was being driven by his wife. His son, Louis Edwards, Jr., was seated between him and his wife. Kathy Ann and Cynthia Edwards were seated in the rear seat. Mr. Edwards was resting his right arm on the sill of the open window of the front door. As they approached the intersection of Airline Highway and La. Hwy. 22, intending to turn left, Mr. Edwards, Louis and Cynthia saw a tail pipe lying in the road. (Kathy Ann was asleep.) Believing that Mrs. Edwards had seen the pipe, they did not warn her immediately. However, when it became apparent to Louis that his mother had not seen the pipe, he yelled, “Look out for the pipe.” The warning came too late. Although Mrs. Edwards jerked the car to the left, she still ran over the pipe. The pipe was thrown up on the right side of the car where it severely lacerated Mr. Edwards’ arm, cutting deeply into the elbow joint.
Mrs. Edwards then rushed her husband to a nearby hospital. Louis, at his father’s instruction, made a crude tourniquet on the way which stopped the bleeding. The plaintiff was seen by Dr. M. Y. Hirsch in the emergency room of the hospital. Dr. Hirsch cleaned, debrided, and sutured the wound using over sixty stitches. Because of the loss of blood and the possibility of infection, Mr. Edwards was admitted to the hospital. He remained in the hospital for five days because he developed some fever.
*451 The trial court found-that Mrs. Edwards was negligent in failing to see and avoid the pipe. Her attention was apparently directed to the signal light at the intersection. The proximity of the traffic light did not relieve Mrs. Edwards of her duty to ascertain whether her course of travel was free from danger and obstructions. “An automobile driver can easily keep his eyes so focused as to be able to tell whether the road is safe and, at the same time, be on the lookout for other traffic or curves in the road.” Arceneaux v. Louisiana Highway Commission, 15 So.2d 638, 640-641 (La.App.Orl. Cir. 1943). Visibility was good at the time of the accident. All the awake passengers saw the pipe. The trial court found this fact very significant. We do also. If the passengers saw the pipe without difficulty, Mrs. Edwards should have also seen it.
Defendant contends that even if Mrs. Edwards were negligent, plaintiff is barred from recovery by his own contributory negligence. However, we agree with the trial court that Mr. Edwards was not negligent. Although a passenger has a duty to warn the driver of dangers known to him which are apparently unknown to the driver, “a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise.” White v. State Farm Mutual Automobile Insurance Co., 222 La. 994, 64 So.2d 245, 249 (1953). Here Mr. Edwards believed his wife was aware of the pipe, therefore he was not negligent in not warning her.
The defendant argues that as an owner-passenger plaintiff was under a greater duty. However, absent unusual circumstances or particular facts, an owner-passenger has the same duty as any other passenger. Williams v. State Farm Insurance Co., 273 So.2d 680 (La.App. 1st Cir. 1973). Defendant has not shown any such unusual circumstances in this case.
On the question of quantum the trial judge awarded plaintiff the sum of $5,000.00 for general damages. Included in this sum was compensation for a residual disability of twenty-five percent of the function of the right arm. Defendant contends that the plaintiff has failed to prove a causal relationship between the injuries and this disability. We must agree.
Dr. Hirsch, plaintiff’s initial treating physician, was not called to testify. His report of May 31, 1973, was introduced by stipulation in lieu of his appearance. In his report he states:
“. . .On the date of discharge, the patient was completely afebrile and there was no evidence of infection of the wound. He was seen again for follow up on the 19th of Sept, at which time the wound again looked good. He had good function in his hand, intact sensation and had no complaints. He was seen again on Sept. 21 and the sutures were removed and the wound looked completely healed and well. No evidence of infection. There was intact function of the hand and arm. Good strength at the elbow and complete motion of the elbow. No sensory deficits. The patient was apparently pleased with the repair. It was my opinion at that time that he should have an excellent result without sequela. I have not seen the patient since that time and I must assume he has done well.”
Following his discharge by Dr. Hirsch on September 21,1972, plaintiff went to Dr. G. Gernon Brown, an expert in orthopedic surgery, on December 13, 1972. Dr. Brown treated plaintiff until August 17, 1973. On the occasion of plaintiff’s last visit to Dr. Brown the latter noted that plaintiff’s right arm could be flexed to sixty degrees and extended to one hundred sixty degrees, an improvement over the first observation of flexion to ninety degrees and extension to fifty-five degrees.
In his written reasons for judgment, the trial judge evaluated the testimony of Dr. Brown thusly:
“In referring to the deposition of Dr. Brown, we observe that he concluded, that it was more likely that the impairment would have resulted from some other cause, but he does not completely rule *452 out the accident as a cause of the impairment. There is no hint or suggestion that the patient was feigning an injury or impairment.
“This Court takes into consideration the fact that the plaintiff suffered an impairment which the Doctor concludes could have been a result of the accident. The Court also considers the fact that his arm was showing some improvement on the occasion of his visit on August 17, 1973. The Court also observes that at the time of the trial on December 14, 1976, the plaintiff was still suffering from some limitation of movement in his right arm. Although we conclude, at this time, because of his occupation it was not a disabling consequence, it was rather an injury to be considered as part of the general damage suffered by the plaintiff.” (Emphasis ours.)
We agree that the above statement is a fair evaluation of Dr. Brown’s testimony but it falls short of the legal requirement of proof of a causal relationship between the initial injury and the alleged disability. While Dr. Brown does not “rule out the accident” as a cause-in-fact of the disability, he places this consequence as nothing more than a “possibility.” He does not, in our judgment, even go so far as concluding that it was a reasonable possibility.
Based on the hypothetical facts as set forth in Dr. Hirsch’s report, above, Dr. Brown deposed:
“Q But the most important thing, though, Doctor, is assume that the treating physician says that the man has good strength at the elbow and range of motion. Isn’t your answer, as to the cause of his disability, isn’t your answer that it would be other than this accident?
A It is more likely that some other factor has, which I don’t know about, intervened.
The above quote is a concise summary of Dr. Brown’s entire deposition. At no point does he raise the consequence of the initial injury, vis a vis, the alleged disability to that of more than a “possibility.” While various phrases have been used by the courts to set a standard of proof necessary to establish a causal relationship between an initial injury and a resulting disability, i. e., “more reasonable than not”, “more probable than not”, “a reasonable probability”, etc., the courts have constantly rejected unsupported possibilities. We must, therefore, hold that plaintiff has failed to prove that the alleged disability was in fact caused by the accident.
As noted above, the trial judge included in his award of $5,000.00 for general damages the claimed disability. We think that a reduction in the award of $1500.00 is appropriate under the circumstances.
Accordingly, for the above reasons, the judgment of the district court is amended by reducing the total award therein from the sum of $5,120.00 to the sum of $3,620.00. In all other respects, the judgment appealed is affirmed at defendant’s costs.
AFFIRMED AS AMENDED.